WALLER, Chief Justice,
for the Court:
¶ 1. Shirley Adams and other landowners in oil and gas producing regions of the state (Contestants) challenged a petition of the U.S. Oil and Gas Association (Petitioners) that proposed amendments to Statewide Rule 68[1] (Disposal of Naturally Occurring Radioactive Materials[2] (NORM) Associated With the Exploration and Production of Oil and Gas) which authorized the surface and subsurface landspreading of NORM as additional methods of disposal. The Mississippi Oil and Gas Board (Board)[3] approved the proposed amendments to Rule 68, and its decision was upheld by the Lincoln County Chancery Court. Contestants now appeal to this Court.
¶ 2. After careful consideration, we find Contestants failed to prove that the Board’s adoption of amended Rule 68 was *61 arbitrary and capricious or against the weight of the evidence. In addition, we find the Board’s decision did not violate federal law or Contestants’ constitutional rights; however, the Board violated Mississippi law when it exceeded its statutory authority under Mississippi Code Section 53-1-17 by amending Rule 68 without gaining the approval of the Mississippi Commission on Environmental Quality (Commission). Accordingly, we reverse the decision of the Lincoln County Chancery Court and remand the order approving the amendments to Rule 68 to the Board to seek the approval of the Commission prior to adopting the amendments.

FACTS & PROCEDURAL HISTORY

¶ 3. In 1999, Petitioners introduced proposed amendments to State Oil and Gas Board Rule 68.[4] The proposed amendments to Rule 68 authorized the surface and subsurface landspreading of NORM under specified conditions. Landspread-ing is defined by Rule 68 as “an action that involves blending of soil to achieve NORM concentrations that are at or below the release criteria.” Contestants filed their objections by a Notice of Contest. A public hearing was set, and notice was provided to the public as required by statute. The Board then solicited and received the input of the Environmental Protection Agency (EPA), Mississippi Department of Environmental Quality (MDEQ), and Mississippi Department of Health (MDH), with regard to the proposed amendments to Rule 68.
¶ 4. A public hearing commenced before the Board, which included three days of testimony from expert witnesses, a day of oral arguments from each side, and volumes of scientific studies. The Board heard testimony from eight expert witnesses. Petitioners called Carol Berger, a certified health physicist; Frank Edwards, a chemical engineer; and Dr. Tate Thig-pen, M.D., a professor of medicine and the director of the division of medical oncology at the University of Mississippi Medical Center. Contestants called William Up-church, a real estate appraiser; William Kimbrell, a petroleum engineer; Stanley Waligoria, a certified health physicist, and Dr. Thomas Schrager, a toxicologist. Robert Goff also testified on behalf of MDH. All of the experts were subject to voir dire and cross-examination. The Board also heard statements from ten members of the general public.
¶ 5. After deliberations, the Board issued a twenty-seven-page order, stating it found “the overwhelming weight of the credible scientific evidence presented in the hearing ... indicates that the approval of the proposed landspreading amendments to Statewide Rule 68 will cause no demonstrable harm or injury to either the public health of the citizens or the environment.” In adopting the amended Rule 68, the Board revised the proposed amendments from Petitioners.
¶ 6. Contestants eventually appealed to the Lincoln County Chancery Court, arguing that the Board’s actions were arbitrary and capricious, were unsupported by substantial evidence, exceeded the authority of the Board and were in violation of Contestants’ constitutional rights.[5] The chancel *62 lor found the actions of the Board in adopting amendments to Rule 68 were not arbitrary or capricious, contrary to the manifest weight of the evidence, or in excess of the Board’s statutory authority or jurisdiction. Contestants now appeal, raising five issues:
I. Whether the Board’s promulgation of the amendments to Rule 68 was arbitrary and capricious.
II. Whether the Board violated Mississippi law when it failed to prepare an economic-impact statement.
III. Whether the Board exceeded its authority amending Rule 68 without the approval of the Commission.
IV. Whether amended Rule 68 is in contravention of Mississippi Code Section 53-3-3 and federal law.
V. Whether the procedures utilized by the Board in promulgating Rule 68 violated the laws of the State of Mississippi, Federal law, and Contestants’ constitutional rights.

DISCUSSION

¶ 7. Our review of an administrative decision of an executive agency is limited and deferential. “When reviewing a chancery or circuit court’s decision concerning the action of an administrative agency, this Court determines only whether the order of the agency 1) was supported by substantial evidence, 2) was ar-bitrary or capricious, 3) was beyond the power of the agency to make, or 4) violated some statutory or constitutional right of the complaining party.” Anadarko Petroleum Corp. v. State Oil & Gas Bd. of Miss., 99 So.3d 109, 111 (Miss.2012), reh’g denied (Nov. 1, 2012) (citing Miss. Sierra Club, Inc. v. Miss. Dep’t of Envtl. Quality, 819 So.2d 515, 519 (Miss.2002)). When reviewing an administrative agency’s decision on appeal, “there is a rebutable presumption in favor of the action of an administrative agency and the burden of proof is upon one challenging its action.” Ricks v. Miss. State Dep’t of Health, 719 So.2d 173, 177 (Miss.1998) (internal quotations omitted). “Additionally, this Court is bound to give due deference to the factual findings of the administrative agency and to the chancellor who adopted the same findings.” Id. (citations omitted).
I. Whether the Board’s promulgation of the amendments to Rule 68 was arbitrary and capricious.
¶ 8. In reviewing whether “an agency’s action was supported by substantial evidence or was arbitrary or capricious, we must be able to understand why the agency ruled as it did.” Anadarko, 99 So.3d at 111 (citing McGowan v. Miss. State Oil & Gas Bd., 604 So.2d 312, 323 (Miss.1992)). Regarding decisions of the Board, this Court has noted “ ‘[i]t is not for this Court to substitute its opinion for the opinion of the Board where the Board has reached its decision on conflicting evidence and where its conclusions are supported by substantial evidence....’” Boyles v. Miss. State Oil & Gas Bd., 794 So.2d 149, 156 (Miss. *63 2001) (quoting Ohio Oil Co. v. Porter, 225 Miss. 55, 82 So.2d 636, 638 (1955)). This Court has defined the arbitrary or capricious standard as follows:
“Arbitrary” means fixed or done capriciously or at pleasure. An act is arbitrary when it is done without adequately determining principle; not done according to reason or judgment, but depending upon the will alone, — absolute in power, tyrannical, despotic, non-rational, — implying either a lack of understanding of or a disregard for the fundamental nature of things.
“Capricious” means freakish, fickle, or arbitrary. An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles....
Harrison County Bd. of Supervisors v. Carlo Corp., Inc., 833 So.2d 582, 583 (Miss.2002) (quoting McGowan v. Miss. State Oil & Gas Bd., 604 So.2d 312, 322 (Miss.1992)).
¶ 9. Contestants argue the Board’s promulgation of amended Rule 68 was arbitrary and capricious because: the Board solicited and then disregarded the opinions of other agencies; the Board’s factual findings were contrary to the weight of evidence introduced at the hearing and during the comment period; the release of property on the basis of survey meter readings alone was insufficient, and there was insufficient proof to show that the proposed amendments to the rule would not present a threat to groundwater.

A. The Board solicited and disregarded the opinions of other agencies.

¶ 10. Contestants argue the letters from EPA, MDH, and MDEQ expressed concern and disapproval about aspects of the amendments to Rule 68, and the Board, through its scheduling order, “discarded the written comments ... and required the agencies to put forth a witness.” Contestants see the Board’s adoption of amended Rule 68 as ignoring these agencies’ opinions; thus, the decision was arbitrary and capricious.
¶ 11. We find the argument of Contestants is without merit. The Board made significant revisions to the proposed amendments to Rule 68 along the lines suggested by various government agencies and with regard to the concerns of the MDH. These revisions include changes to the areas in which landspreading operations can occur in response to the letter from MDEQ and EPA and changes regarding compliance and notice based on the letter from MDH. Therefore, we find Contestants’ argument on this point is without merit.

B. The Board’s factual findings were contrary to the weight of evidence introduced at the hearing and during the comment period.

¶ 12. Contestants argue that the Board’s adoption of amended Rule 68 was not supported by substantial evidence and runs contrary to the weight of the evidence. This Court previously has addressed whether the Board acted arbitrarily and capriciously regarding the adoption of Rule 69, which regulates the control of NORM occurring during the production process as opposed to the disposal of NORM addressed by Rule 68. Rule 69 specifically addresses remediation, site monitoring, and health protections for contaminated facilities. See Boyles v. Miss. State Oil & Gas Bd., 794 So.2d 149 (Miss.2001); Miss.Code R. § 26-2:1.69 (Weil 2012) (“Statewide Rule 69”). Boyles involved a group of landowners who believed the proposed Rule 69 “would not adequately protect the public health and environment.” Boyles, 794 So.2d at 152.
*64 ¶ 13. The Board heard three days of expert testimony, in which many of the same experts, including Berger and Thigpen, testified about the health implications related to NORM with regard to proposed Rule 69. Id. at 152-57. After considering the testimony from all the experts, the Board issued an order adopting proposed Rule 69 “regulating the handling, dispersion,' and other disposition of oil field NORM.” Id. at 152. The landowners lost their appeal in chancery court and appealed to this Court, arguing the Board’s promulgation of Rule 69 was arbitrary and capricious because the rule would cause a violation of various federal laws, and the assumptions upon which the Board’s decision was based were invalid. Id.
¶ 14. In a unanimous decision, this Court upheld the Board’s order promulgating Rule 69, finding the Board’s decision “was supported by substantial evidence and ... was neither arbitrary nor capricious.” Id. at 157. The Court evaluated the testimony of Berger, Thigpen, and other experts in favor of Rule 69 in relation to the testimony of the experts who opposed the rule, finding a conflict between the experts that the Board resolved after hearing all of the testimony. Id. at 156. In finding the Board’s decision was supported by substantial evidence, the Court noted:
This Court is now asked to review an Oil and Gas Board Order which is clearly based on substantial expert testimony which more than supports the Board’s Order. The complaining parties, the appellants herein, assert that the experts upon which the Board relied were not credible and the assumptions upon which their opinions were based were erroneous. It is true that the testimony of the appellants’ experts differed from the appellees’ experts. However, the Board heard the testimony of all those experts and evaluated the credibility of the various witnesses. Therefore ... it is not the place of the reviewing court to substitute its judgment for that of the administrative agency.
Id. at 156-57 (citing Ohio Oil Co. v. Porter, 225 Miss. 55, 82 So.2d 636 (1955)). Contestants make many of the same arguments which were advanced before the Board in opposition to Rule 69.
¶ 15. In light of our decision in Boyles and after a complete review of the record, we find the Board’s decision was based on substantial evidence. Each side presented experts in their fields who were subject to rigorous cross-examination. The testimony and affidavit of Berger noted that the level of radiation allowed under Rule 69, already approved by the Board and by this Court, was significantly higher than the levels allowed under Rule 68. The Board also found compelling the testimony of Thigpen, the only physician to testify for either party, who stated the levels and standards for radiation set forth in Rule 68 outline safeguards he believed to be protective of public safety. Evidence was put before the Board of two other states— Texas and New Mexico — that both had passed similar rules regarding the landsp-reading of NORM. Finally, the Board’s twenty-seven-page order makes clear the testimony they found compelling and the reasons for their decision, including the Board’s revisions to the proposed amendments.
¶ 16. The Board was faced with experts on both sides who disagreed with one another, who argued the other side’s experts were biased, not credible, or their assumptions were flawed. After three days of testimony, a fourth day of oral arguments, and volumes of scientific reports and documents, the Board made its decision. Therefore, we find the Board’s decision *65 was supported by the substantial weight of the evidence.

C. Survey meter readings alone are insufficient as a testing method to release property for unrestricted use.

¶ 17. Contestants also argue that Petitioners’ experts’ data was inappropriate because its basis for releasing landspread NORM sites for unrestricted use was founded upon survey meter readings alone. Contestants’ experts testified that dose measurements from survey meters “do not accurately characterize soil activities,” rendering the data recorded from them inappropriate to determine whether a site can be released for unrestricted use. However, Petitioners’ experts testified that federal agencies, including the EPA, approve the use of survey meter readings as a means of determining the threat of radiation in a given area. In addition, Petitioners point out this Court upheld the use of this technique in Boyles. See Boyles, 794 So.2d at 156-57.
¶ 18. We find our decision in Boyles on point with regard to this claim. There, Contestants’ attorneys argued the Board’s decision was arbitrary and capricious because it “relied on erroneous assumptions with regard to how radiation should be measured.” Boyles, 794 So.2d at 156. As discussed above, this Court upheld the decision of the Board in Boyles. In the case before us, evidence was before the Board that both the EPA and Nuclear Regulatory Commission approve the use of survey meter readings; thus, we find this issue is without merit.

D. Insufficient proof was shown that the proposed amendments to the rule would not present a threat to groundwater.

¶ 19. Contestants argue Petitioners presented no field-verified data to support their opinions regarding groundwater contamination in relation to landspread sites. They cite the testimony of Clay Kimbrell, Contestants’ expert in engineering and geology, who testified about his studies on the negative impact of on-site disposal practices on freshwater aquifers in Mississippi oil fields. Kimbrell testified that he had found radium-226 and radium-228, two components of NORM, and several other chemicals in the groundwater of oilfield sites he had investigated. These levels exceeded the limits set by the Safe Drinking Water Act, and it was his opinion that Rule 68 would increase the chances of these elements entering the groundwater. 42 U.S.C. §§ 300f to 800j-26 (2006). Contestants contend Kimbrell’s testimony also showed varying and uncertain solubility rates of radioactive waste mixes, whereas “[Petitioners] offered no credible scientific evidence to demonstrate to a reasonable certainty that no radioactive and/or hazardous material would enter the groundwater beneath a landspread site.” Lastly, they argue the evidence submitted by Petitioners ignores other toxic and carcinogenic chemicals known to be associated with oil-field waste that would be subject to landspreading.
¶ 20. However, substantial expert testimony was put before the Board, on which it based its decision. Edwards, Petitioners’ expert on movement of constituents through groundwater, testified that the teachability of radium sulfate, the primary constituent of NORM, was “not very soluble at all” and cited the studies introduced by Contestants. He further testified that the EPA’s “applicable or relevant and appropriate requirement” (ARAR) for Superfund cleanup sites with respect to radium was five picocuries per gram above background radiation levels, which is the same as required by Rule 68. Edwards also testified that the prohibition in Rule 68 against landspreading in a twenty-five-year flood plain and buffer zones in certain *66 areas was protective of the State’s groundwater. Finally, other Board rules, such as Rule 45, provide regulations for the prevention of pollution from “[c]rude oil, waste oil, oil sludge ... oil bearing mixtures of any kind, and all other liquid. ....” See Miss.Code R. § 26-2:1.45 (Weil 2012) (“Statewide Rule 45”). Therefore, this Court finds that, although both sides’ experts disagreed, substantial evidence before the Board supported the conclusion it made.
¶ 21. Because of the substantial amount of evidence before the Board and the fact that a review of the record shows the Board’s actions were not “freakish” or “whimsical,” we find the Board’s order approving the amendments to Rule 68 was not arbitrary and capricious.
II. Whether the Board violated Mississippi law when it failed to prepare an economic-impact statement.
¶ 22. At the time amended Rule 68 was adopted by the Board, provisions of the Mississippi Administrative Procedures Law, Section 25-43-6[6] of the Mississippi Code, provided that economic-impact studies were required for any rule amendment for which the costs incurred by those required to comply with the rule exceeded $100,000. The Code section specifically stated:
(1) Prior to giving the notice [of a proposed rule making], each agency proposing the adoption of a rule or significant amendment of an existing rule imposing a duty, responsibility or requirement on any person shall consider the economic impact the rule will have on the citizens of our state and the benefits the rule will cause to accrue to those citizens. For purposes of this section, a “significant amendment” means any amendment to a rule for which the total aggregate cost to all persons required to comply with that rule exceeds One Hundred Thousand Dollars.
(2) Each agency shall prepare a written report providing an economic impact statement for the adoption of a rule or significant amendment to an existing rule imposing a duty, responsibility or requirement on any person, except as provided in subsection (4) of this section....
(4) This section does not apply to the adoption or significant amendment of:
(a) Any rule which is required by the federal government pursuant to a state/federal program delegation agreement
(b) Any rule which is expressly required by state law.
Miss.Code Ann. § 25-43-6 (1999).
¶ 23. Contestants argue the amendments to Rule 68 were significant because of “the potential costs imposed ... including healthcare costs, damages/decrease in property values, site investigation costs and costs resulting from damages to natural resources.” Further, they argue the changes to the rule imposed duties, responsibilities, and requirements related to the disposal of NORM, including the following: NORM disposal must be handled in accordance with other Board rules; proper permits for radioactive waste transportation must be obtained from the Mississippi Emergency Management Agency (MEMA) in accordance with its rules; no individual may dispose of NORM without having a permit or providing forty-eight *67 hours’ notice to the Board of Supervisors, and all locations utilized for NORM disposal through landspreading must be situated outside of a twenty-five-year flood plain and can occur only in an area where the groundwater table is equal to or greater than five feet below the bottom of the disposal area. See Miss.Code R. § 26-2:1.68 (Weil 2012) (“Statewide Rule 68”).
¶ 24. In opposition, the Board and Petitioners argue that the proposed amendments to Rule 68 were not subject to the economic-impact requirement because the amendments did not impose a duty or responsibility on anyone, but “merely add to the list of ‘acceptable methods of disposal’ that operators are given to deal with NORM.” They also argue that there is no evidence in the record to show the aggregate cost of compliance would exceed $100,000; therefore, the amendments are not significant as defined by Section 25-43-6(1). Further, they contend these types of speculative economic impacts are not allegedly going to be incurred by those required to comply with the rule; ie., Contestants’ finances are not relevant.
¶25. We find that the Board was not required to prepare an economic-impact statement. Although we note the amendments to Rule 68 impose responsibilities and duties on oil and gas operators, there is no proof in the record that the amendments would be “significant,” as defined in Section 25-43-6, or that Contestants are in the class of individuals “required to comply with that rule.” See Miss.Code Ann. § 25-43-6(1) (1999). The amendments to Rule 68 were promulgated by the Board to set out the acceptable methods oil and gas operators may use to dispose of NORM from oil-field exploration and production. No requirements are imposed on Contestant landowners through the amendments to Rule 68. Therefore, we hold the Board was under no duty to prepare an economic-impact statement.
III. Whether the Board exceeded its authority amending Rule 68 without the approval of the Commission.
¶ 26. This issue involves the interplay between Section 53-l-17(3)(a) and Section 53-1-17(7) of the Mississippi Code. “Statutory interpretation is a matter of law which this Court reviews de novo.” Lutz Homes, Inc. v. Weston, 19 So.3d 60, 62 (Miss.2009) (quoting Wallace v. Town of Raleigh, 815 So.2d 1203, 1206 (Miss.2002) (citation omitted)). When faced with two statutes on the same subject, a well-settled rule of statutory construction dictates that both “‘must be read together in light of legislative intent.’ ” Tunica County v. Hampton Co. Nat’l Sur., LLC, 27 So.3d 1128, 1133 (Miss.2009) (quoting Lenoir v. Madison County, 641 So.2d 1124, 1129 (Miss.1994)). This Court previously has held “statutes on the same subject, although in apparent conflict, should, if possible, be construed in harmony with each other to give effect to each.” Boyles, 794 So.2d at 160 (citing Roberts v. Miss. Republican Party State Exec. Comm., 465 So.2d 1050, 1051 (Miss.1985)). “ ‘In order for a subsequent act to repeal a former one expressly, it must point out the statute repealed with sufficient certainty.... [T]he court will not hold the former repealed by implication, unless there is a plain and unavoidable repugnancy between them.’ ” Tunica County, 27 So.3d at 1133-34 (quoting Ex parte McInnis, 98 Miss. 773, 54 So. 260, 262 (1910)).
¶ 27. With this in mind, we look to Mississippi Code Section 53-1-17, which states in pertinent part:
(3) The board shall have the authority, and it shall be its duty, to make, after notice and hearing as hereinafter provid *68 ed, such reasonable rules, regulations and orders as 'may be necessary from time to time in the proper administration and enforcement of the provisions of Sections 53-1-1 through 53-1-47, inclusive, and Sections 53-3-1 through 53-3-21, inclusive, and to amend the same after due notice and hearing, including but not limited to, rules, regulations and orders for the following purposes:
(a) To require that the drilling, casing and plugging of wells be done in such a manner as to prevent the escape of oil or gas out of one stratum to another; to prevent the intrusion of water into an oil or gas stratum from a separate stratum; to prevent the pollution of freshwater supplies by oil, gas or saltwater; and generally to prevent waste as herein defined. The duty is hereby imposed upon the State Oil and Gas Board to make suitable and adequate rules and regulations, subject to the approval of the Mississippi Commission on Environmental Quality, requiring the disposal of waste products such as, but not limited to, mud, acids, saltwater or any corrosive products brought to the surface from any oil, gas or condensate well in this state, to prevent seepage, overflow or damage and injury to the topsoil or surface. The Commission on Environmental Quality shall have the exclusive authority to regulate the commercial disposal of such waste products pursuant to Section 17-17-47. However, the board shall have the exclusive authority to regulate and promulgate rules and regulations pertaining to commercial and noncommercial Class II underground injection wells. It is the policy of the state not only to conserve minerals but to conserve and protect its surface lands for agriculture, timber and any and all other beneficial purposes, and the destruction of surface lands where reasonable means of their protection exist shall no longer be permitted.
[[Image here]]
(7) Notwithstanding any other provision contained in the Laws of the State of Mississippi, the board shall have exclusive jurisdiction and authority, and it shall be its duty, to make, after notice and hearing as hereinafter provided, such reasonable rules, regulations, standards and orders, and to issue such permits as may be necessary, to regulate the use, management, manufacture, production, ownership, investigation and noncommercial disposal of oil field exploration and production waste in order to prevent, eliminate or reduce waste by pollution to acceptable levels in order to protect the public health, safety and the environment.
Miss.Code Ann. § 53-1-17 (Rev.2003) (emphasis added).
¶ 28. Contestants argue that rules promulgated by the Board regarding the disposal of waste products are subject to the approval of the Mississippi Commission on Environmental Quality (“Commission”). They contend the amendments to Rule 68 deal with the disposal of waste products from oil and gas wells; thus, the Board was required to get the approval of the Commission prior to amending the rule. See Boyles v. Miss. State Oil & Gas Bd., 794 So.2d 149 (Miss.2001). Further, they argue that, when the Legislature adopted subsection (7) in 1995, it did not explicitly repeal subsection (3)(a). Contestants would find these two statutes can be read in harmony, arguing subsection (3)(a) simply enlists the Commission, with its expertise in environmental matters, to approve the rules and regulations regarding the disposal of oilfield waste.
¶ 29. Petitioners argue that subsection (7) is controlling because of the “notwith *69 standing” language. Petitioners also argue that the amendments to Rule . 68 involve only “non-commercial”[7] disposal of NORM, and subsection (7) gives the Board, “exclusive jurisdiction and authority ... to make ... rules, regulations, standards and orders ... to regulate the use, management, production, ownership, investigation and noncommercial disposal of oil field exploration and production waste.”[8] Miss.Code Ann. § 53-1-17(7) (Rev.2003) (emphasis added). Conversely, subsection (3)(a) gives the Commission “exclusive authority to regulate ... commercial disposal.” Miss.Code Ann. § 53-l-17(3)(a) (Rev. 2003) (emphasis added).
¶ 30. On this issue, Petitioners point to the decision in Howard v. TotalFina, in which this Court stated the Board had exclusive authority and jurisdiction over the noncommercial disposal of oilfield waste. Howard v. TotalFina E & P U.S.A., 899 So.2d 882, 887-88 (Miss.2005); accord, Town of Bolton v. Chevron Oil Co., 919 So.2d 1101, 1106-07 (Miss.Ct.App.2005). In addition, Petitioners argue that the amendments to Rule 68 do not require the disposal of anything. Instead, the amendments merely add two options for disposal of NORM that were already available under Rule 68. Thus, the Board was under no duty to get the approval of the Commission before adopting the amendments.
¶ 31. The interplay between these two subsections was squarely before this Court in Boyles v. Miss. State Oil & Gas Bd., in relation to the Board’s promulgation of Statewide Rule 69. See Boyles, 794 So.2d 149 (Miss.2001). In Boyles, the Court held that “Miss.Code Ann. § 53-l-17(3)(a) specifically requires the Commission to approve [Board] rules and regulations requiring the disposal of waste products brought to the surface from any oil, gas, or condensate well.” Id. at 161 (emphasis added). The Boyles Court also recognized the Board’s exclusive jurisdiction with regard to control of oilfield NORM under Section 53-1-17(7). Id. Discussing the two statutes, the Boyles Court found they could be read in harmony:
When the Board promulgates a rule regarding “the disposal of waste products” as mentioned in 53-l-17(3)(a), the statute requires that the Board gain the approval of the Commission. Miss.Code Ann. 53-l-17(3)(a) (1999). The Commission must approve the rule before it can become effective. However, when regulating the control of oilfield NORM when it is present in the oilfield, as is the subject of Rule 69, the Board has “exclusive jurisdiction and authority” and is not required to seek Commission approval before promulgating a rule. Miss.Code Ann. 53-l-17(7)(1999).
Id. at 160 (emphasis in the original). The Court went on to hold that Section 53-1-17(3)(a) did not apply, because Rule 69 was not one that required the disposal of waste products. Id. at 161.
¶ 32. We find our decision in Boyles is controlling. As we held in Boyles, “it is clear that the two statutory provisions are regulating different areas and, therefore, can be read in harmony.” Id. The Legisla *70 ture adopted subsection (7) after subsection (3)(a) and did not expressly overturn subsection (3)(a). See 1995 Miss. Laws, Ch. 356. Further, unlike Rule 69, which was at issue in Boyles, the amendments to Rule 68 specifically regulate the disposal of NORM, which is a waste product brought to the surface of an oil and gas well; thus, subsection (3)(a) is applicable. See Miss.Code R. § 26-2:1.68 (Weil 2012) (“Disposal of Naturally Occurring Radioactive Materials (NORM) Associated With the Exploration and Production of Oil and Gas”); n. 8 supra. While it is true that the amendments to Rule 68 do not require operators to landspread their NORM, operators are required to dispose of it in accordance with the amendments to Rule 68, and if they chose to landspread, the requirements they must meet for disposing of that NORM via landspreading all were promulgated by the Board in amending Rule 68.
¶ 33. In addition, subsection (3)(a) does not distinguish between commercial and noncommercial disposal of NORM when it instructs the Board to seek the approval of the Commission.[9] We also recognize that subsection (3)(a) states the Board is required to gain the approval of the Commission when promulgating rules requiring the disposal of oilfield waste “to prevent ... damage and injury to the topsoil or surface.” Miss.Code Ann. § 53-1-17(3)(a) (1999). Because the amendments to Rule 68 regulate the disposal of NORM, and subsection (3)(a) does not distinguish between commercial and noncommercial disposal of waste when stating the Board must seek the approval of the Commission, we hold the Board exceeded its statutory authority by not seeking the approval of the Commission before adopting the amendments to Rule 68.
IV. Whether amended Rule 68 is in contravention of Mississippi Code Section 53-3-3 and federal law.

A. State-Law Claim

¶ 34. Section 53-3-3 of the Mississippi Code makes any “waste” of oil or gas as defined by Mississippi Code Section 53-1-3 unlawful. Miss.Code Ann. § 53-3-3 (Rev.2003). Waste is partially defined as “[t]he inefficient storing of oil; and the locating, spacing, drilling, equipping, operating or producing of any oil or gas well or wells in a manner causing or tending to cause unnecessary or excessive surface loss or destruction of oil or gas.” Miss. Code Ann. § 53 — 1—3(l)(ii) (Rev.2003). The Board is responsible for assessing fines in violation of this statute. Miss.Code Ann. § 53-1-47(b) (Rev.2003).
¶ 35. Contestants argue that the Board’s adoption of Rule 68 will cause surface loss due to waste, and thus, the amendments are in violation of Section 53-3-3. Petitioners argue that the Board heard extensive testimony from qualified experts that the amendments to Rule 68 were a threat to neither human health nor the environment. They further argue that Contestants failed to cite any evidence in the record to support this claim, because the record contains none.
¶ 36. Contestants’ argument on this claim is without merit. When read in conjunction with the other definitions of “waste” under this subsection, it is clear the rule is concerned with the inappropri *71 ate production of oil and gas. See Miss. Code Ann. § 63-1-3(0© (Rev.2003) (improper spacing of wells causing dissipation of reservoir energy); Miss.Code Ann. § 53-l-3(i )(iii) (Rev.2003) (correlative rights abuse due to nonuniform production or drainage from an oil pool). Further, the Board is charged with enforcement of this provision under Section 53-1 — 47(b), which states “[w]hen any charge is filed with the Board charging any person with any such violation.... ” Miss.Code Ann. § 53-1-47 (Rev.2003). Contestants do not cite any particular violation or allege that they exhausted their remedies with the Board by filing charges there. Thus, we find this issue is without merit.

B. Federal-Law Claims

¶37. Contestants also argue that the amended Rule 68 violates the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act (“RCRA”) and the Comprehensive Environmental Response Compensation and Liability Act (“CERCLA”). See “CERCLA,” 42 U.S.C. §§ 9601-9675 (2006); “RCRA,” 42 U.S.C. §§ 6901-6992k (2006). Similarly in Boyles, the plaintiffs argued the Board’s order regarding Rule 69 was arbitrary and capricious because allegedly it violated CERCLA and RCRA. Boyles, 794 So.2d at 153. However, this Court found “most, if not all, private causes of action created by those federal statutes are federal causes of action, and ... they certainly would not be heard by this Court as a court of first impression.” Id. See, e.g., 42 U.S.C.A. § 6972 (2006) (“Any action under paragraph (a)(1) [permitting actions against alleged polluters] of this subsection shall be brought in the district court for the district in which the alleged violation occurred. ...). For these reasons we find Petitioners’ argument without merit.
V. Whether the procedures utilized by the Board in amending Rule 68 violated Contestants’ constitutional rights.
¶ 38. The Constitution of the State of Mississippi states “[n]o person shall be deprived of life, liberty, or property except by due-process of law.” Miss. Const. art. 3, § 14. Contestants argue that the Board violated the due process rights of Contestants by depriving them of their property values without fair notice or a fair opportunity to be heard and that the amended rule would constitute a regulatory taking. Petitioners argue that the four-day public hearing was held in accordance with all applicable statutes and laws, and Contestants were provided timely and proper notice. Further, they contend both sides were represented by competent attorneys; they both called witnesses, cross-examined opposing witnesses, and introduced exhibits. Finally, the Board and Petitioners argue that the Contestants’ regulatory-taking argument is procedurally barred because it is being raised for the first time on this appeal.
¶ 39. Contestants put on evidence from Douglas Upchurch, a certified real estate appraiser, who testified that landspreading operations would diminish the value of the affected land and also would cause a stigma which could render the property unmarketable. Petitioners objected, arguing damages for a perceived stigma are not compensable under Mississippi law, that Upchurch’s testimony was speculative because it did not relate to a particular piece of property and finally, that Upchurch’s testimony called for legal conclusions about Mississippi’s real estate disclosure law.
¶40. This Court previously has held that plaintiffs cannot recover damages under a “stigma theory.” Anglado v. Leaf River Forest Prods., Inc., 716 So.2d 543, *72 549 (Miss.1998) (“[T]he plaintiffs cannot recover for lessened property values due to an unwarranted public perception of danger. Such a ‘stigma theory has been expressly rejected by this Court.”); Leaf River Forest Prods., Inc. v. Ferguson, 662 So.2d 648, 664 (Miss.1995) (“We further find that mere stigma ... is not sufficient evidence of compensable injury.”). Additionally, we find that Contestants were given full and fair notice of the petition to amend Rule 68, and that they were allowed to lodge their objections to said rule. They were represented vigorously by competent counsel, allowed to call witnesses, and put exhibits into evidence during a four-day public hearing on the matter. Finally, Contestants never raised their takings argument before the Board or on appeal to the Lincoln County Chancery Court; thus, in. keeping with this Court’s precedent, we find this claim to be procedurally barred. See Dedeaux Utility Co., Inc. v. City of Gulfport, 938 So.2d 838, 846 (Miss.2006). For these reasons, Contestants’ argument on this claim is without merit.
CONCLUSION
¶ 41. We find that Contestants failed to prove that the State Oil and Gas Board’s adoption of amended Rule 68 was arbitrary and capricious or against the weight of the evidence. The Board was presented with testimony of experts on both sides who disagreed with each other and stated the other side’s experts’ data was faulty. The Board was faced with attorneys who argued the other side was biased and their experts lacked credibility. After three days of expert testimony and a fourth day of oral argument, the Board, as trier of fact, came to its conclusion. We hold the decision of the Board was supported by substantial evidence and that the order promulgating the amendments to Rule 68 was neither arbitrary nor capricious.
¶ 42. However, we hold the Board exceeded its statutory authority under Section 53-1-17, amending Rule 68 without gaining the prior approval of the Mississippi Commission on Environmental Quality pursuant to Mississippi Code Section 53-l-17(3)(a). Accordingly, we reverse the decision of the Lincoln County Chancery Court and remand the order approving the amendments to Rule 68 to the Board for further action pursuant to this opinion.
¶ 43. REVERSED AND REMANDED.
LAMAR, KITCHENS, PIERCE, KING AND COLEMAN, JJ, CONCUR. DICKINSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND CHANDLER, J.
DICKINSON, Presiding Justice,

. Rule 68 initially was approved on August 17, 1994 (Order No. 278-94, Docket 203-94) and authorized the down-hole injection and disposal of NORM.

. "Naturally occurring radioactive material (NORM) shall mean any nuclide which is radioactive in its natural physical state (i.e., not man-made), but does not include byproduct, source or special nuclear material nor does it include radioactive materials continuously contained within the closed system of exploration and production of oil and gas, including but not limited to, produced saltwater.” Miss.Code R. § 26-2:1.68 (Weil 2012).

.The Board also filed a brief in support of its Order.

. This case was consolidated with 2010-CA-00598-COA.

. Two appeals regarding procedural issues occurred prior to this appeal. In Adams v. Mississippi State Oil & Gas Board, 854 So.2d 7 (Miss.Ct.App.2003), the chancellor dismissed Contestants’ appeal for failing to properly perfect the appeal within the time permitted by statute. Id. at 8. The Court of Appeals reversed, finding that, although the appeal was not perfected according to the statute, it was done in a manner sufficient to preserve Contestants' right of appellate review. Id. at *62 10. After remand, a new chancellor had to be appointed, and Contestants filed their briefs in September 2007. Adams v. Miss. State Oil & Gas Bd., 80 So.3d 869, 871 (Miss.Ct.App.2012). The case sat until the chancellor dismissed the action for failure to prosecute in April 2009. The Court of Appeals held the dismissal was void because the chancellor failed to give prior notice to Contestants before the dismissal. Id. at 873. The case was finally remanded to the Lincoln County Chancery Court for a trial on the merits, in which the chancellor upheld the Board’s amendments to Rule 68.

. Miss.Code Ann. § 25-43-6 was repealed by 2003 Miss. Laws, Ch. 304, § 26 (HB 651). See Miss.Code Ann. §§ 25-43-1.101 to 25-43-3.101 (Miss.2010).

. " ‘Commercial oil field exploration and production waste disposal’ means storage, treatment, recovery, processing, disposal or acceptance of oil field exploration and production waste from more than one (1) generator or for a fee.” Miss.Code Ann. § 17-17-3(e) (Rev.2012).

. “ '[O]il field exploration and production wastes’ shall mean: (i) Any liquid, gaseous, solid, naturally occurring radioactive, or other substance(s); including but not limited to, any chemical, produced water, sludge, oil-water emulsion, oil field brine, waste oil, sediment, scale or other waste substance(s).” Miss.Code Ann. § 53 — 1—3(t) (Rev.2003).

. We note that nothing in the amendments to Rule 68 would expressly limit the landspread-ing of NORM to noncommercial operations. Although landspreading is limited to either an area reasonably necessary around the well site or to land at which the operator owns the entirety of the surface estate, no provision expressly limits the landspreading of different generators' NORM at one site or bans the landspreading of waste for a fee.