# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-00357-SCT

*TELLUS OPERATING GROUP, LLC*

*v.*

*MAXWELL ENERGY, INC.*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 01/31/2012 |
| TRIAL JUDGE: | HON. DAVID SHOEMAKE |
| TRIAL COURT ATTORNEYS: | MALCOLM ROGERS |
| | CHRISTY M. SPARKS |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | GLENN GATES TAYLOR |
| | CHRISTY M. SPARKS |
| ATTORNEYS FOR APPELLEE: | HEATHER WHITE MARTIN |
| | MALCOLM T. ROGERS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE CHANCERY COURT OF JEFFERSON DAVIS COUNTY IS REVERSED AND RENDERED- 01/22/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     In this case, we review a challenge to a Mississippi Oil and Gas Board pooling order force-integrating various owners' interests in a proposed drilling unit. *See* Miss. Code Ann.

§ 53-3-7 (Rev. 2003). We hold that the Board's order was supported by substantial evidence. We also find that one owner's attempt to voluntarily integrate his interest within twenty days of the Board's pooling order did not satisfy Section 53-3-7(2)(g)(iii).

**FACTS AND PROCEEDINGS BELOW**

¶2. In 2006, Tellus Operating Group, LLC, sought to integrate the interests of various owners for the purpose of drilling a well unit in Jefferson Davis County. In accordance with its statutory duty to make a good-faith effort to negotiate the voluntary integration of the owners' interests on reasonable terms, Tellus mailed option forms to the owners in June and July of 2006. The three options for voluntary integration were to lease the interest, farm out the interest, or participate as a working interest owner in the costs and risks of drilling, developing, and operating the well by agreeing in writing to pay the owner's share of the actual costs of drilling, testing, completing, equipping, and operating the well. For the third option of participation, the letter accompanying the option form indicated that the agreement in writing must be evidenced by execution of an Authorization for Expenditure ("AFE") and Operating Agreement ("JOA"). It further included a summary of some of the terms of the JOA. Upon election of that option, the AFE and JOA would be prepared and sent to the owner for execution.[1]

¶3. D. E. Maxwell, owner and president of interest owner Maxwell Energy, Inc., checked the third option to participate in the costs of developing the unit. However, he struck through the language on the option form which stated that owner would participate "in accordance

---

[1] Per Board policy, owners also could request a copy of the proposed JOA for review prior to electing an option.

with the terms and conditions set out in paragraph (3) of the offer in the attached letter," and wrote in by hand that he would participate "as to Maxwell Energy, Inc.'s proportionate share of .00971714 [%] in accordance with applicable law set out in Miss. Code 53-3-7." He did not execute the AFE and JOA.

¶4.     After allowing for the statutorily required ninety days to pass after submitting the options to the owners, Tellus petitioned the Mississippi Oil and Gas Board to integrate the interests of the owners, including a force-integration of Maxwell Energy's interest as a nonconsenting owner subject to alternate-risk penalties.[2] Twenty-one owners had elected participation and signed off on the terms of the AFE and JOA. With ninety-six percent of the owners' interests voluntarily integrated, Maxwell Energy challenged the pooling petition, seeking recognition that it had consented to be a participating owner, that it wanted more time to negotiate a more favorable JOA, and that it was willing immediately to front its share of the initial anticipated cost of the dry well (calculated by applying its percent interest to the estimated initial dry-well cost outlined in the AFE).

¶5.     The Board held a hearing on October 18, 2006. Only a few days before the hearing, Maxwell Energy sent Tellus an alternate JOA proposal. D.E. Maxwell appeared at the hearing on the company's behalf. Maxwell requested a continuance of the hearing, stating

---

[2] Because nonconsenting owners do not front any of the costs of developing the drilling unit, they do not risk financial loss if the well is dry or unprofitable. Alternate-risk penalties have the ultimate effect of diverting a greater share of profits, if any, to the participating owners who risked a financial loss up front. Statutes like these have been enacted because "it is unfair for a nonconsenting owner . . . to be relieved of the costs and risks associated with drilling a producing well, but at the same time reap the benefits of another's efforts in extracting oil and gas from beneath his or her land." *Cadeco, LLC v. Industrial Comm'n of North Dakota*, 812 N.W. 2d 405, 407-08 (N.D. 2012).

that he wanted the drilling to go forward as scheduled, but that he wanted time to negotiate the participation terms to meet Tellus "halfway" between the two proposed JOAs. Tellus objected to the continuance, asserting that it had complied with its statutory good-faith requirements and deadlines. It further noted that operations on the well were scheduled to begin prior to the next Board meeting.[3] The Board denied the motion to continue.

¶6.     Maxwell testified, as did Tellus landman James Clark. Tellus's attorney asked Maxwell to go through, point by point, the terms of the JOA he found to be unreasonable. Maxwell conceded that he had entered or was aware of other JOAs that contained similar terms, but he also testified to his personal experience and knowledge of JOAs with more favorable terms, particularly in regard to the high percentage of alternate-risk penalties on subsequent unit projects. Clark testified that Tellus's JOA was based on a standard form developed in 1982 by the American Association of Professional Landmen. The form contains blanks to be filled in based on the needs of the parties, and parties routinely use strike-outs and additions to modify the form. Clark testified that the alternate-risk percentages, while high, are not unusual in the industry, given the increase in recent years of the costs and risks of drilling exploration. Maxwell argued that terms can be unreasonable as applied to some owners and not others, and that the intent of the force-integration statute was not to give

---

[3] Tellus's attorney indicated to the Board that he had, when the force-integration statute initially came out, attempted to do the same thing for a client–elect participation merely by submitting a check for a proportionate share of up-front costs–and that the Board consistently has rejected that type of attempt to elect participation absent an agreement to more specific reasonable terms.

operators undue leverage to convince owners to lease their interest without the power to negotiate away from expensive penalties.

¶7.  In additional support of its argument that the proposed terms were reasonable and offered in good faith, Tellus pointed to the fact that twenty-one other owners, many of them sophisticated in the industry, had agreed to the terms of the JOA. It pointed to the difficulties that could arise if less than one percent of the owners were governed by a significantly different JOA from the other owners. It also pointed to the late date at which Maxwell Energy had gotten back to Tellus with a proposed alternate JOA.

¶8.  The Board granted the petition to pool the interests, including a force-integration of Maxwell Energy's interest as a nonconsenting owner. After stating that the statutory requirements had been met, the Board's order stated that "the evidence presented at the hearing supports these findings." Within twenty days of the pooling order, Maxwell Energy sent Tellus a check for $18,277.94 and a letter stating that Maxwell Energy

> . . . elects in writing to participate and join in on the same cost basis as the other consenting owners for its share of the cost and risk of developing and operating of the above unit as described and referenced hereinabove, insofar and only insofar as the same relates to Maxwell's leasehold interest covering mineral interests which are subject to alternate risk charges, and hereby agrees in writing to pay its pro rata share of all the costs associated therewith.

Tellus rejected Maxwell Energy's check, and Maxwell Energy did not consent to any of the options offered prior to the Board's hearing and order.

¶9.  Maxwell Energy appealed the Board's force-integration order to the Jefferson Davis County Chancery Court. In 2012, the chancery court reversed the Board's order, finding that it was not supported by substantial evidence. The court also found that Maxwell Energy's

5

submission of the check for its share of estimated initial drilling costs, along with the letter stating that it would participate on the same costs basis, satisfied the requirements of Section 53-3-7(2)(g)(iii) for voluntary integration after a pooling order is entered.

¶10. Tellus appealed to the Mississippi Court of Appeals, which initially ruled unanimously in Maxwell Energy's favor, affirming the ruling of the chancery court. Then, after granting Tellus's motion for rehearing and receiving numerous amici briefs, the Court of Appeals reversed its decision and issued a unanimous opinion in favor of Tellus, reversing the chancery court judgment and reinstating the Board's pooling order. We granted certiorari review of the Court of Appeals' second opinion.[4]

## DISCUSSION

¶11. "The standard for judicial review of orders of the State Oil and Gas Board is whether the order is supported by substantial evidence, is arbitrary or capricious, beyond the power of the Board to make, or violates some constitutional right of the complaining party." *Superior Oil Co. v. State Oil & Gas Bd.*, 220 So. 2d 602, 603-04 (Miss.1969). The Board evaluates the weight and credibility of the evidence, and when the Board evaluates conflicting testimony, the reviewing court "may not substitute its opinion for the opinion of the Board." *Boyles v. Mississippi State Oil & Gas Bd.*, 794 So. 2d 149, 156 (Miss. 2001). Questions of statutory interpretation are reviewed *de novo*. *Adams v. Mississippi State Oil & Gas Bd.*, 139 So. 3d 58, 67 (Miss. 2014).

---

[4] Tellus did not file a motion for rehearing before the Court of Appeals on the second judgment. In granting certiorari review, this Court waived that procedural requirement in view of the circumstance such a motion would be a subsequent motion for rehearing after the case had been reversed on an initial motion for rehearing.

## I. The Mississippi Oil and Gas Board's order was supported by substantial evidence.

¶12. The process by which operators offer owners the opportunity to voluntarily integrate their drilling interests is governed by Mississippi Code Section 53-3-7(2)(a), which provides in relevant part:

> In the event that one or more owners owning not less than thirty-three percent (33%) of the drilling rights in a drilling unit voluntarily consent to the drilling of a unit well thereon, and the operator has made a good faith effort to (i) negotiate with each nonconsenting owner to have said owner's interest voluntarily integrated into the unit . . . and (v) offer each nonconsenting owner the opportunity to lease or farm out on reasonable terms or to participate in the cost and risk of developing and operating the unit well involved on reasonable terms, by agreeing in writing, then the operator may petition the board to allow it to charge alternate charges . . .

Miss. Code Ann. § 53-3-7(2)(a) (Rev. 2003).

¶13. A plain reading of the statute clearly provides that the agreement in writing is an agreement to the reasonable terms that have been negotiated in good faith. While a JOA specifically is not statutorily required, it is an appropriate and common vehicle in which the agreed-on terms are memorialized. Maxwell and Tellus had not entered into a statutorily sufficient agreement in writing prior to the hearing on Tellus's integration petition to the Board.

¶14. The Board heard, point by point, the terms in the JOA Maxwell objected to as unreasonable as to Maxwell Energy, as well as Tellus's rebuttal evidence. The Board members asked extensive questions regarding the terms, common industry practices, and the witness's experiences in the industry. Moreover, Maxwell did not present counteroffer terms until almost the eve of the scheduled Board hearing. Applying our deferential standard of

7

review, we find that the Board's decision that Tellus met all of its statutory requirements for offering good-faith options for voluntary integration on reasonable terms was supported by substantial evidence.[5]

## II. Statutory Interpretation of Mississippi Code Section 53-3-7(2)(g)(iii)

¶15.   Mississippi Code Section 53-3-7(2)(g)(iii) provides a last opportunity for nonconsenting owners to participate following a Board pooling order:

> . . . The pooling order if issued shall provide that each nonconsenting owner shall be afforded the opportunity to participate in the development and operation of the well in the pooled unit as to all or any part of said owner's interest on the same costs basis as the consenting owners by agreeing in writing to pay that part of the costs of such development and operation chargeable to said nonconsenting owner's interest, or to enter into such other written agreement with the operator as the parties may contract, provided such acceptance in writing is filed with the board within twenty (20) days after the pooling order is filed for record with the board . . . .

Miss. Code Ann. § 53-3-7(2)(g)(iii) (Rev. 2003). Maxwell Energy argues that it satisfied this statute by sending a unilateral letter to Tellus stating that it would participate on the same costs basis as the consenting owners and by sending Tellus a check for Maxwell Energy's estimated share of initial drilling costs. Tellus, consistent with the Board's longstanding position, argues that, when the two subsections of Section53-3-7 are read together, Section 53-3-7(2)(g) simply provides a opportunity to elect in writing one of the three offers in

---

[5] We certainly do not find, and Tellus does not suggest, that the terms necessarily must be uniform among the owners in order to be reasonable. We do not intend to discourage owners from engaging in negotiations or operators from being flexible within reason to obtain the goal of voluntary integration.

Section 53-3-7(2)(a), on the terms the Board found reasonable, or to negotiate an alternate contract on such terms as the parties can agree on.

¶16.    We will engage in statutory construction when a statutory provision is ambiguous due to two reasonable interpretations. *Miss. Methodist Hosp. and Rehab. Ctr., Inc. v. Miss. Div. of Medicaid*, 21 So. 3d 600, 607 (Miss. 2009). Under the doctrine of *in pari materia*, where two statutes speak to the same or similar subject matter, "this Court must resolve the ambiguity by applying the statute consistently with other statutes dealing with the same or similar subject matter." *State ex rel. Hood v. Madison Cnty. ex rel. Madison Cnty. Bd. Of Supervisors*, 873 So. 2d 85, 91 (Miss. 2004).

¶17.    We agree with Tellus and the longtime working position of the Board that, when Sections 53-3-7(2)(a) and 53-3-7(2)(g)(iii) are read together, Section 53-3-7(2)(g)(iii) requires a nonconsenting owner, after a pooling order, to enter into a written agreement to what the Board found to be reasonable terms, or enter into such other written agreement as the parties may contract. If we construed Maxwell Energy's actions to satisfy this statute, then owners who participate under Section 53-3-7(g)(iii) would in effect be exempt from the requirements of Section 53-3-7(2) for an an agreement in writing to reasonable terms negotiated in good faith. Section 53-3-7(g)(iii) does not create a loophole whereby an owner can simply wait until after a pooling order is issued as a way of avoiding being bound to terms the Board found to be reasonable or avoiding further negotiations to reach mutual alternative terms with the operator. The absence of contractually agreed-on terms also is highly impracticable, given the highly complicated and expensive nature of drilling projects

9

that might last decades. We find that the statute is intended to provide certainty of the reasonable terms to which the parties are bound as the unit(s) are developed.

## CONCLUSION

¶18.   We hold that the chancellor erred in finding that the Board's order was not supported by substantial evidence and also in finding that Maxwell's actions after the pooling order operated to integrate his interest voluntarily. The judgment of the Court of Appeals is affirmed.  The chancellor's order is reversed, and the Board's pooling order is reinstated.

¶19.   **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE CHANCERY COURT OF JEFFERSON DAVIS COUNTY IS REVERSED AND RENDERED**.

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR. WALLER, C.J., NOT PARTICIPATING**.