# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01657-COA

**WATKINS DEVELOPMENT, LLC AND DAVID WATKINS, SR.**

APPELLANTS

**v.**

**C. DELBERT HOSEMANN, JR., IN HIS OFFICIAL CAPACITY AS MISSISSIPPI SECRETARY OF STATE**

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/12/2014 |
| TRIAL JUDGE: | HON. HOLLIS MCGEHEE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | J. BRAD PIGOTT |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: DOUGLAS T. MIRACLE CHERYN NETZ BAKER JESSICA LEIGH LONG ALISON O'NEAL MCMINN |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | AFFIRMED IN PART AND REVERSED IN PART THE FINAL ORDER OF THE SECRETARY OF STATE FINDING VIOLATIONS OF THE MISSISSIPPI SECURITIES ACT AND IMPOSING RESTITUTION, ADMINISTRATIVE PENALTIES, AND COSTS |
| DISPOSITION: | AFFIRMED IN PART, REVERSED AND RENDERED IN PART - 06/28/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., CARLTON AND FAIR, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1. This appeal arises from an administrative proceeding brought by the Mississippi

Secretary of State, in its regulatory capacity, against Watkins Development LLC and David

Watkins Sr. (collectively, "Watkins" unless the context requires otherwise).[1] In April 2012,

Watkins defaulted on the payment of a loan of taxable revenue bond proceeds issued to Retro

Metro LLC by the Mississippi Business Finance Corporation ("MBFC")[2] to be used to

revitalize the Belk building at Metrocenter Mall in Jackson, Mississippi. *See* Miss. Code

Ann. § 75-71-501 (Rev. 2009). Pursuant to its statutory authority to enforce and regulate the

Mississippi Securities Act and the sale of securities in Mississippi, the Secretary of State

issued a Notice of Intent to Impose Administrative Penalty and Order Restitution and

Disgorgement of Profit ("Notice of Intent") to Watkins.[3] The Notice of Intent was initially

issued on July 30, 2013, and amended on October 23, 2013.[4]

¶2.     Watkins requested an administrative hearing in response to the Notice of Intent, and

the administrative hearing was held on October 29-30, 2013. David Watkins testified at the

hearing and was represented by counsel. The hearing officer ultimately found that Watkins

---

[1] *See* Mississippi Securities Act, Miss. Code Ann. § 75-7-101 (Rev. 2002), et seq.;
*see also* Miss. Code Ann. § 57-10-401 (Rev. 2014), et seq.

[2] *See* Miss. Code Ann. § 57-10-405 (Rev. 2014) (functions of the MBFC); Miss.
Code Ann. § 57-71-13 (Rev. 2014) (establishing Mississippi Small Enterprise Development
Act and tax credit for project costs); Miss. Code Ann. § 57-10-3 (Rev. 2014); Miss. Code
Ann. § 57-10-167 (Rev. 2014); Miss. Code Ann. § 57-71-5(a) (Rev. 2014) (defining
MBFC); Miss. Code Ann. § 57-10-401(a)-(b) (defining "approved company," "approved
costs," and "eligible company"); Miss. Code Ann. § 57-10-401(d) (defining bonds as
revenue bonds, notes, or debt obligations of the corporation authorized to be issued by
MBFC on behalf of an eligible company or other state agency).

[3] *See* Miss. Code Ann. § 75-71-604(a)(3) (Rev. 2009) (allows the Secretary of State
to enforce the Mississippi Securities Act and employ remedies, including civil penalties).

[4] For the purposes of clarity in this opinion, the Notice of Intent refers to the October
23, 2013 amended notice, unless otherwise specified.

engaged in four violations of the Mississippi Securities Act. The Secretary of State adopted the findings and conclusions of the hearing officer, with some modifications, and the Secretary of State then issued a Final Order setting forth Watkins's violations of the Mississippi Securities Act and the penalties and remedies thus imposed. Watkins appealed to the chancery court for judicial review of the administrative regulatory enforcement action and the findings and remedies imposed by the Secretary of State. By order dated November 19, 2014, the chancellor affirmed in part the Secretary of State's Final Order, by affirming only three of the findings of violations of the Mississippi Securities Act. The chancellor set aside the Secretary of State's finding that Watkins violated the Mississippi Securities Act by failing to disclose in the Private Placement Memorandum ("PPM"), Loan Agreement, and bond documents the February 21, 2011 Development Agreement ("Development Agreement"), which contained Retro Metro's financial obligation to Watkins Development. The chancellor held that this finding exceeded the authority of the Secretary of State.

¶3.      Watkins now appeals to this Court. Upon review, we affirm the chancellor in part and reverse and render in part, and in so doing, we reinstate the Secretary of State's Final Order. We find that substantial and competent evidence in the record supports the Secretary of State's findings that Watkins committed four violations of the Mississippi Securities Act, as well as the penalties/remedies imposed as a result of these four violations.[5] We hold that these findings were not arbitrary or capricious, nor did the findings violate a statutory or constitutional right. We further find that the Secretary of State possessed statutory authority

_____

[5] *See Adams v. Miss. State Oil & Gas Bd.*, 139 So. 3d 58, 62 (¶7) (Miss. 2014) (standard of review of an administrative agency).

3

to render these findings and to impose the respective remedies. *See* Miss. Code Ann. § 75-71-609 (Rev. 2009) (limited judicial review); Miss. Code Ann. § 75-71-604 (administrative enforcement authority of Secretary of State).

**FACTS**

¶4.     The record reflects that in early 2010, Watkins Development, a private limited liability company, began work as the master planner for Meridian, Mississippi, to redevelop areas of Meridian. While serving in this capacity, David Watkins discovered that the Meridian police station was substandard and that immediate action had to be taken to address this need.

¶5.     That same year, relative to this case, Watkins Development and David Watkins Sr. also began working on a project to renovate the Belk building at Metrocenter Mall in Jackson. David Watkins testified at the administrative hearing that the mayor of Jackson at that time asked him to help with the project, including the renovation of the Belk building at Metrocenter. David Watkins testified that he purchased the Belk building, with the understanding that at the conclusion of the renovation, the City of Jackson would lease space in the building.[6]

¶6.     In August 2010, David Watkins filed the certification of formation to form Retro Metro, a limited liability company, with the Secretary of State for the purposes of revitalizing the Belk building.[7] The record reflects that David Watkins served as the manager of Retro

---

[6] The record contains the lease agreement between the City of Jackson and Retro Metro, which was executed in April 2011.

[7] *See* Miss. Code Ann. § 79-29-201 (Rev. 2013) (forming a limited liability company).

4

Metro. On December 6, 2010, David Watkins began to arrange for financing to fund the project of renovating the Belk building. In so doing, he sought a loan on behalf of Retro Metro to be obtained through revenue bond proceeds issued by MBFC. *See* Miss. Code Ann. § 57-10-401(d), (g) (discussing bonds and eligible companies). The documents in the record and the transcript from the administrative hearing reflect that David Watkins testified that he recruited investment banking firm Duncan Williams to buy the bond. David Watkins and Retro Metro's counsel, along with Keith Parsons, bond counsel herein, began developing a formal PPM for the financing in 2010.[8] The record shows that Parsons emailed David Watkins and his attorney on February 3, 2011, seeking suggested changes to and approval of the PPM language. *See* Miss. Code Ann. § 57-10-405 (functions of the MBFC). The record shows that David Watkins failed to correct any inaccurate information in the PPM language and that he failed to disclose any additional significant financial information relevant to the bond.

¶7. Meanwhile, while arranging for this financing to fund the project, Watkins Development entered into a Development Agreement on February 21, 2011, with Retro Metro. The record reflects that Watkins served as the agent executing the Development Agreement on behalf of Watkins Development and that he also served as the agent/member executing the Development Agreement on behalf of Retro Metro. The Development Agreement provided for Watkins Development to be paid a flat fee of $500,000, although with no specified date of payment, and to be paid a mobilization fee of twenty-five percent

---

[8] *See* Miss. Code Ann. § 57-10-401(i) (defining finance agreement); Miss. Code Ann. § 57-10-417 (Rev. 2014) (bonds issued by MBFC).

5

of "project cost," which amount was due at closing. Project costs included $2.5 million in construction costs, plus overhead costs, which included rents for office space, wages, and compensation of employees of Watkins Development. The record reflects that the financial liability from Retro Metro to Watkins Development amounted to a minimum of $1,125,000. The record shows that David Watkins testified at the administrative hearing that pursuant to the February 21, 2011 Development Agreement, he believed that Retro Metro's financial liability to Watkins Development would vest on the day of closing on the loan of the bond proceeds. However, the record shows that he failed to disclose the existence of the Development Agreement, or Retro Metro's resulting financial liability, in the PPM, the Loan Agreement, or other bond documents.

¶8.     With respect to the loan and loan documents in this case, the record reflects that Watkins applied with MBFC to receive a loan from bond tax revenue proceeds.[9] As a result of the PPM dated April 5, 2011, MBFC, as a conduit issuer,[10] issued Taxable Revenue Bonds, Series 2011, to Retro Metro on April 12, 2011, in the principal amount of $5,195,000.[11] MBFC is authorized by statute to approve loans of bond proceeds to private businesses and to approve the issuance of bonds for such.

¶9.     As part of the bond offering, and as required by the MBFC, Watkins executed a Loan

---

[9] *See* Miss. Code Ann. § 57-10-401(i) (defining finance agreement).

[10] A conduit issuer is an organization, usually a government agency, that issues municipal securities to raise capital for revenue-generating projects where the funds generated are used by a third party that develops the project and uses revenue generated from the project to make payments to investors.

[11] *See* Miss. Code Ann. § 75-71-604.

Agreement on April 1, 2011. In section 2.2(k) of the Loan Agreement, Watkins provided: "Other than any agreements which have been delivered to the Issuer and the Trustee or the Purchaser, the Company [Retro Metro] is not a party to any indenture, agreement or other instrument materially and adversely affecting its business, properties, assets, liabilities, operations, income or condition, whether financial or otherwise." Watkins, as manager of Retro Metro, also executed a bond purchase contract stating, "The Company [Retro Metro] will not take or omit to take, as may be applicable, any action which would, in any way, cause the proceeds of the Series 2011 Bonds to be applied in a manner contrary to the requirements of the Indenture, the Loan Agreement and the Series 2011 Note." *See* Miss. Code Ann. § 57-10-401(b) (approved costs); Miss. Code Ann. § 57-10-401(i) (defining finance agreement).

¶10. The record reflects that the April 5, 2011 PPM provides no mention of the Development Agreement. As stated, David Watkins executed a Loan Agreement as part of the bond offering. Bond attorney Keith Parsons testified at the administrative hearing that had David Watkins disclosed the Development Agreement, as required by the Loan Agreement, and had David Watkins disclosed the way that Watkins Development would later requisition payments, then "there would have been no bond issued because I . . . would have not given an opinion and we would have called the deal off." In his findings of fact, the Secretary of State[12] found that David Watkins was an experienced bond attorney that had participated in more than 700 bond issues over a twenty-year period. The Secretary of State

---

[12] As stated, the Secretary of State adopted the hearing officer's findings of fact and conclusions of law.

also found that David Watkins was responsible for the accuracy of the contents of the PPM and that he possessed ample opportunity to provide revisions or corrections to the PPM.

¶11. The record shows that on April 12, 2011, the bond closing date, David Watkins executed a document certifying that he was authorized to represent Retro Metro in the bond closing.[13] The record shows, and the hearing officer found, that David Watkins also executed a closing certificate for the bond issue representing that the Loan Agreement and bond documents, including the PPM, were correct in all material respects. The record establishes that the bonds were issued on April 12, 2011, pursuant to a trust indenture between MBFC and BankPlus. The record reflects that BankPlus, as trustee under the trust indenture, held the proceeds of $4,875,000 in a construction account for Retro Metro.[14] The Loan Agreement reflects that MBFC, through BankPlus as trustee, loaned the bond proceeds to Retro Metro to revitalize the first floor of the Belk building. *See* Miss. Code R. 6-1:2.11 (transcript of bond closing to be submitted to MBFC and its legal counsel within sixty days after closing).

¶12. The Secretary of State, in adopting the findings of fact of the hearing officer, found that immediately after the issuance of the bonds, each of the members of Retro Metro received a "partner distribution" of forty times their alleged initial contribution to the formation of Retro Metro. The hearing officer explained in his findings of fact that "from

---

[13] *See* Miss. Code Ann. § 57-10-401 (defining finance agreement).

[14] *See* Miss. Code Ann. § 57-10-427 (Rev. 2014) ("The bonds may be secured by an indenture by and between the corporation and a corporate trustee which may be any bank or other corporation having the power of a trust company[.]").

8

an examination of the bank account of Retro Metro, it is not clear that Watkins Development . . . or one of the others required to contribute $1,500 even made their initial contribution to Retro Metro." In adopting the findings of fact of the hearing officer, the Secretary of State held that the Loan Agreement failed to authorize Watkins's withdrawal of $400,000 from the construction account to pay a "partner distribution."

¶13. The record shows, and the hearing officer additionally found that, pursuant to page 2 of Exhibit C of the Loan Agreement, with each requisition issued for payment from the construction account, Watkins Development was required to "[a]ttach copies of invoices or other appropriate supporting documentation for this requisition." The Secretary of State found that Watkins Development failed to attach any invoices or other appropriate supporting documentation to the requisitions as required, and also that the required quoted language from the Loan Agreement was deleted from each of the submitted requisitions.

¶14. The record reflects five requisitions by Watkins Development requesting payment from the construction account. In requisition 1, Watkins Development requested a payment for construction costs of $1,250,000. Requisition 2 requested a payment for construction costs of an additional $500,000. In requisition 3, Watkins Development requested $800,000 for construction costs. According to these three requisitions for payment, Watkins Development represented to BankPlus, as trustee, that construction costs incurred already totaled $2,550,000. The hearing officer found that the submitted requisitions showed that in requisitions 4 and 5 ($200,000 and $300,000, respectively), Watkins Development's total request for payment of construction costs incurred totaled $3,050,000. Yet the record reflects

9

that the total amount of construction completed as of requisition 5 on June 24, 2011, was only $959,382.90, and the current payment due as of June 24, 2011, was only $195,275.

¶15. Between April 12, 2011, and June 7, 2011, the record reflects that Watkins Development caused $3,800,000 to be paid from the construction account to the Retro Metro Account and over $2,943,000 to be paid from the Retro Metro Account. The record reflects that no records or invoices from accounts payable or accounts receivable for Watkins Development were submitted into evidence at the administrative hearing or otherwise.

¶16. At the administrative hearing, David Watkins testified that in June 2011 Retro Metro owed Watkins Development more than $587,000 pursuant to the Development Agreement that he previously executed as managing representative for both Retro Metro and Watkins Development. However, the Secretary of State found that no monies were withdrawn by Retro Metro to pay any alleged debt owed by Retro Metro to Watkins Development. The record and the findings of the Secretary of State reflect that Watkins provided no documentation to support that any debt, other than fees set forth under the Development Agreement, was owed to Watkins by Retro Metro, and no requisitions for payment were submitted that referred to any Retro Metro debt owed to Watkins Development.[15] Rather, the record establishes that monies from the Retro Metro Account were eventually transferred for an unauthorized purpose to an account pertaining to an unrelated limited liability company and project in Meridian.

_____

[15] The Secretary of State held that repayment to Watkins Development for acquisition costs had already been made by BankPlus, as trustee, out of the construction account on April 12, 2011, as part of requisition 1. *See* Miss. Code Ann. § 57-10-401(b) (approved costs); Miss. Code Ann. § 57-10-401(i) (defining finance agreement).

¶17. Regarding the unrelated project in Meridian, on April l, 2011, Watkins Development executed documents to form Meridian Law Enforcement Center LLC ("MLEC") in order to redevelop the old Cowboy Maloney's building in Meridian. The Certificate of Formation was filed with the Secretary of State's Office on April 12, 2011. The record reflects that at the administrative hearing, David Watkins claimed a lack of time "to do" an acquisition loan to purchase the Meridian property but that he continued the efforts to pursue a construction loan. David Watkins testified that Watkins Development was not "going to need the money to fund the construction loan as long as [they] had a commitment to fund it." The commitment to fund the loan came from Citizens National Bank on May 18, 2011. Besides Citizens National Bank, Watkins Development did not seek a loan or talk to any other bank about a loan for the Meridian project. The transcript of the administrative hearing shows that David Watkins admitted that he possessed awareness prior to June 1, 2011, that an acquisition loan for the purchasing of the Meridian property was not going to be possible to obtain.

¶18. The record reflects that immediately before June 2, 2011, the Retro Metro Account possessed a balance of approximately $60,000. On June 2, 2011, BankPlus, as trustee, transferred $800,000 from the construction account into the Retro Metro Account for construction costs reflected by Watkins in requisition 3.[16] The record reflects that six days

---

[16] The administrative-hearing officer explained that requisition 3 stated, "This requisition relates to the following portion of the Project, if any (please specify in reasonable detail the nature of the obligation): Construction costs, architects and professional fees, acquisition costs and partner distribution, as shown in the attached schedule." The schedule attached to requisition 3 only discloses that Watkins requested a distribution for "Construction Costs (demolition, framing, plumbing, electrical)" of $800,000. The hearing

11

later, on June 8, 2011, Watkins then wired $587,084.34 from the Retro Metro Account to a real-estate-closing account at the law firm Hammack, Barry, Thaggard, and May LLP of Meridian, for the unrelated purpose of purchasing real property located at 510 22nd Avenue in Meridian for the MLEC.

¶19. At the administrative hearing, Watkins testified and asserted that multiple resources were available to Watkins Development, including cash reserves, for financing the MLEC property purchase. However, the record reflects that no documentation was offered at the hearing to substantiate this allegation. The Secretary of State, in adopting the hearing officer's findings of fact, found that David Watkins testified at the administrative hearing that the Retro Metro bond proceeds were used for the MLEC project due to a serious time crunch. The record shows that the bonds first defaulted in April 2012, and, according to the record, the Secretary of State maintains payments have remained one payment in default since that time.[17]

¶20. Following an investigation, the Secretary of State instituted this administrative enforcement proceeding on July 30, 2013 by issuing a Notice of Intent to Impose Administrative Penalty and Order Restitution and Disgorgement of Profit. In his October 23,

---

officer also observed that requisition 3 "does not include any of the required supporting documentation for payment other than 'Construction Cost,' nor does it include any supporting documentation for payment to Watkins Development or any description of things that could be payable to Watkins Development." The hearing officer further found that "[b]y signing and submitting requisition #3, [Watkins] made 'all the covenants and all the reps and warranties made in the Loan Agreement on April 1, 2011[,] be sort of evergreen. Every time a disbursement is requested, they're all made anew."

[17] *See* Miss. Code Ann. § 57-10-444 (Rev. 2014) (MBFC must submit an annual report of activities).

2013 Notice of Intent, the Secretary of State provided the following findings of fact:

> Based on statements made by Watkins Development as manager of Retro Metro, particularly the . . . [PPM] dated April 5, 2011, the . . . [MBFC], as a conduit issuer, issued Taxable Revenue Bonds, Series 2011[,] . . . in the principal amount of $5,195,000.00, and, pursuant to a loan agreement with Retro Metro, loaned the proceeds of the [b]onds . . . to Retro Metro for the sole purpose to be used for the revitalization of the first floor of the "Belk Building" in Metrocenter shopping center in Jackson, Mississippi. The Bonds were issued on April 12, 2011.
>
> . . . .
>
> On April 12, 2011, the same day that the [b]onds were issued, [David] Watkins, as manager of Watkins Development, filed a "Certificate of Formation" with the Mississippi Secretary of State's office for . . . [MLEC] for the purpose of purchasing real property in Meridian, Mississippi[,] and leasing the property to the City of Meridian for a police station.
>
> . . . .
>
> On June 8, 2011, [David] Watkins, as manager of Retro Metro, caused $587,084.34 to be wired from the Retro Metro Account to a real estate closing account for the law firm of Hammack, Barry, Thaggard, and May LLP of Meridian, Mississippi.
>
> The $587,084.34 wired from the Retro Metro Account was used to purchase real property located at 510 22nd Avenue, Meridian, Mississippi. Said real property is currently owned by MLEC and leased from MLEC to the City of Meridian.

¶21. The Secretary of State also provided that he issued the Notice of Intent following an investigation, which concluded that Watkins had engaged in the following conduct prohibited by the Mississippi Securities Act:

> Watkins Development's and/or [David] Watkins's failure to disclose in the PPM or Bond Documents any additional obligations of Retro Metro to Watkins Development as set forth in the Development Agreement is a material omission within the meaning of [s]ection 75-71-501(2) of the Act, in connection with the offer and sale of securities and has operated as a fraud

13

upon the purchaser of the securities, i.e., the purchasers of the Bonds (the "Purchasers"). Additionally, [David] Watkins affirmatively represented in the Bond Documents that Retro Metro had no other financial obligations and therefore [David] Watkins'[s] representation in the Bond Documents to that effect was an untrue statement of material fact. The Purchasers were deprived of material information, i.e., the undisclosed, unclear, and substantial financial obligation of Retro Metro to Watkins Development, in their decisions to purchase the Bonds.

Retro Metro was the conduit borrower of the Bonds, and Watkins Development, as manager of Retro Metro, through its manager [David] Watkins, was responsible for the material misstatements set forth in the Bond Documents which failed to disclose [David] Watkins'[s] and Watkins Development's intent to finance the activities of MLEC with the Proceeds.

By failing to disclose their intentions to appropriate and/or convert the Proceeds for the activities of MLEC, Watkins Development and/or [David] Watkins have violated [s]ection 75-71-501 by employing a device, scheme, or artifice to defraud; and/or making an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or engaging in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

Watkins Development's and/or [David] Watkins'[s] failure to disclose in the Bond Documents the intent to use and[/]or convert any portion of the Proceeds to finance the activities of MLEC is a material omission within the meaning of [s]ection 75-71-501(2) of the Act, in connection with the offer and sale of securities and has operated as a fraud upon the Purchasers. Retro Metro's Project has been a tenuous success and the venture remains in danger of default on its debt under the Loan Agreement. The Purchasers were deprived of material information in deciding to purchase the Bonds.

Watkins Development's and/or [David] Watkins'[s] act of misuse of the Bond Proceeds to finance the activities of MLEC has undermined the viability of Retro Metro, which is ultimately responsible for the repayment of the debt, constituting a fraud by Watkins Development and/or [David] Watkins upon his partners in Retro Metro. This fraud is in connection with the offer and sale of securities within the meaning of [s]ection 75-71-501 of the Act because Retro Metro remains responsible for repayment of the debt pursuant to the Loan Agreement, as the conduit borrower.

14

¶22.     After receiving the notice and findings of the Secretary of State of the aforementioned violations of the Mississippi Securities Act, David Watkins filed a request for an administrative hearing on August 8, 2013.  On August 16, 2013, the Secretary of State appointed a hearing officer to preside over an administrative hearing on the matter.[18]  On October 23, 2013, the Secretary of State amended his notice to include the allegation that David Watkins committed fraud as to the terms of the Development Agreement itself, setting forth that "Watkins Development's and/or [David] Watkins's failure to disclose in the PPM or Bond Documents any additional obligations of Retro Metro to Watkins Development as set forth in the Development Agreement is a material omission within the meaning of [s]ection 75-71-501(2)" of the Mississippi Securities Act, and that such fraud was "in connection with" the April 2011 bond sale.

¶23.     At the administrative hearing held on October 29-30, 2013, David Watkins argued that the amended Notice of Intent served upon him by the Secretary of State was amended on October 23, 2013, only six days before the hearing, and thus provided him insufficient notice of the allegations against him.  David Watkins asserted that the Secretary of State first alleged that the terms of the Development Agreement were evidence of fraud in the amended Notice of Intent.  David Watkins also claimed that the Notice of Intent failed to mention any allegation that the requisition forms submitted by Watkins Development for payment contained any aspect of fraud in that the requisitions contained "substantial omissions." However, the record before us reflects that Watkins filed no request for a continuance of the

---

[18] *See* Miss. Code Ann. § 75-71-604(a) & (c).

October 29-30, 2013 administrative hearing.

¶24. At this conclusion of the hearing, the hearing officer found the following violations by Watkins of the Mississippi Securities Act:

> [Watkins's] failure to disclose in the PPM or bond documents the significant and material liabilities of Retro Metro to Watkins Development, as set forth in the Development Agreement, is a violation of section 75-71-501 of the [Mississippi Securities] Act. The minimum which Watkins Development was entitled to receive under the Development Agreement was $ 1,125,000. This was forty-five percent of the total construction cost estimate of the project that, according to [David] Watkins, was due at closing.
>
> Additionally, [David] Watkins affirmatively represented in the Bond Documents that Retro Metro had no other material financial obligation which had not been disclosed and[,] therefore, [Watkins Development's] representation in the Bond Documents to that effect was an untrue statement of material fact and a violation of section 75-71-501 [of the Mississippi Securities Act].
>
> . . . .
>
> [Watkins] either failed to disclose this Development Agreement or intended to hide[] that Retro Metro had an agreement with material adverse financial liabilities[;] this representation was untrue, misleading, and part of the overall deceit. Consequently, [Watkins's] conduct constitutes a violation of section 75-71-501.
>
> . . . .
>
> When [Watkins] failed to disclose their intentions to use the Proceeds for any purpose other than the improvements for the Retro Metro project, [Watkins] violated section 75-71-501 [of the Mississippi Securities Act] by employing a device, scheme, or artifice to mislead or deceive.
>
> . . . .
>
> [Watkins's] failure to disclose in the bond documents, including the requisition, the intent to use any portion of the proceeds to finance the activities of MLEC is a material omission and violation of section 75-71-501(2) [of the Mississippi Securities Act].

16

. . . .

[Watkins's] misuse of the bond proceeds was an act and course of business that operated to mislead or deceive. This is in connection with the offer and sale of securities and is a violation of section 75-71-501.

¶25. The hearing officer ultimately held:

Any of the violations above is [a] sufficient basis for the imposition of an administrative penalty. The violations are a sufficient basis for restitution. Therefore, a Final Order is hereby recommended ordering Watkins Development and David Watkins, collectively, to immediately make restitution of $587,084.34 plus legal interest from June 8, 2011[,] until paid to Retro Metro arising from the use of bond proceeds to purchase the Meridian property. Further, an administrative penalty in the amount of $75,000.00 is hereby recommended against Watkins Development and David Watkins, collectively. The penalty is calculated as follows:

1. [$25,000] for violating [section] 75-71-501 by omissions and untrue statements in the bond offering and sale.

2. [$25,000] for violating [section] 75-71-501 by employing misleading and deceptive actions in connection with the use of bond proceeds.

3. [$25,000] for violating [section] 75-71-501 by manipulating the requisition forms and by substantial omissions in the requisitions for payments.

On March 24, 2014, the Secretary of State entered a Final Order adopting the hearing officer's proposed findings of fact and conclusions of law, with some minor additions and modifications, as set forth in the Final Order. The Secretary of State's Final Order found Watkins committed the following four violations of the Mississippi Securities Act:

(a) Watkins'[s] failure to disclose in the Private Placement Memorandum or the bond documents claimed significant and material liabilities of Retro Metro, LLC to Watkins Development as set forth in the Development Agreement is a violation of [s]ection 75-71- 501(2) of the Act;

(b) Watkins failed to disclose intentions to use the bond proceeds for any purpose other than the improvements for the Retro Metro project, in violation of [s]ection 75-71-501(1)[,] by employing a device, scheme, or artifice to

17

mislead or deceive;

(c) Watkins'[s] failure to disclose that a portion of the Bond Proceeds would be used to finance the activities of Mississippi Law Enforcement Center, LLC ("MLEC") is a material omission and violation of [s]ection 75-71- 501(2) of the Act;

(d) Watkins'[s] misuse of the bond proceeds was an act and course of business that operated to mislead or deceive. This is in connection with the offer and sale of securities and is a violation of [s]ection 75-71-501(3) of the Act.

¶26. The Final Order imposed restitution, administrative penalties, and costs against Watkins Development and Watkins jointly and severally as follows:

(a) Twenty-Five Thousand Dollars ($25.000.00) for violating [s]ection 75-71-501(2) of the Act; "by omissions and untrue statements in the bond offering and sale."

(b) Twenty-Five Thousand Dollars ($25,000.00) for violating [s]ection 75-71-501(3) of the Act; "by employing misleading and deceptive actions in connection with the use of bond proceeds.'"

(c) Twenty-Five Thousand Dollars ($25,000.00) for violating [s]ection 75-71-501 (2) and (3) of the Act; and "by making substantial omissions in the requisitions for payments. While Requisitions submitted were not identical to Exhibit C to the Loan Agreement, the Secretary of State respectfully disagrees with the Hearing Officer that the alteration in form was a violation of Section 75-71-501 of the Act."

(d) $587,084.34 plus interest for restitution pursuant to the Secretary's authority under [s]ection 75-71-604(a)(3)(d) of the Act;

(e) $18,047.39 for the costs of investigation and administrative proceedings.

¶27. Watkins then timely filed, as allowed by Mississippi Code Annotated section 75-71-609(a), an appeal to the chancellor seeking judicial review of that Final Order. As acknowledged, the chancellor conducted a hearing on September 18, 2014. In an opinion and order filed on November 19, 2014, the chancellor affirmed three of the four findings made

18

by the Secretary of State after finding them to be supported by substantial evidence; not arbitrary and capricious; not beyond the power of the Secretary to make; and nonviolative of Watkins's statutory or constitutional rights. Specifically, the chancellor affirmed the following three violations found by the Secretary of State in the Final Order:

> (b) When Watkins failed to disclose their intentions to use the proceeds for any purpose other than the improvements for the Retro Metro project, Watkins violated [s]ection 75-71-501(1) by employing a device, scheme, or artifice to mislead or deceive; is affirmed;
>
> (c) Watkins'[s] use of a portion of the Proceeds to finance the activities of Mississippi Law Enforcement Center, LLC is a material omission and violation of [s]ection 75-71-501(2) of the [Mississippi Securities] Act; is affirmed;
>
> (d) Watkins'[s] misuse of the Bond Proceeds was an act and course of business that operated to mislead or deceive. This is in connection with the offer and sale of securities and is a violation of [s]ection 75-71-501(3) of the [Mississippi Securities] Act; is affirmed. The court further affirms the Secretary's Final Order imposing restitution, administrative penalties and costs against Watkins Development and Watkins, jointly and severally.

¶28. However, the chancellor reversed the Secretary of State's findings, and all related impositions of penalties, with respect to the violation found by the Secretary of State for Watkins's failure to disclose the February 21, 2011 Development Agreement, as well as the omission of the Development Agreement, from the PPM and bond documents. In setting aside this finding of a Mississippi Securities Act violation, the chancellor rendered factual findings that differed from those facts found by both the Secretary of State and the hearing officer. The chancellor specifically found as follows: that the Development Agreement terms were lawful; that the existence of the Development Agreement and its terms were not material to the April 2011 bond sale; that the substantial fee payments owed by Retro Metro

19

to Watkins Development under the Development Agreement were within the reasonable expectations of such a bond buyer; and that Watkins in any event had never fraudulently concealed or misrepresented the Development Agreement terms at or in connection with that bond sale. The chancellor held that "Watkins'[s] failure to disclose in the Private Placement Memorandum or the Bond Documents claimed significant and material liabilities of Retro Metro, LLC to Watkins Development as set forth in the Development Agreement is a violation of [s]ection 75-71-501(2) of the Act; is reversed for the reasons set forth hereinabove."

¶29. It is from this Final Order that Watkins now appeals.

## STANDARD OF REVIEW

¶30. Appellate courts possess a limited standard in our judicial review of an administrative agency's decision. *Stevison v. Pub. Emps' Ret. Sys. of Miss.*, 966 So. 2d 874, 878 (¶15) (Miss. Ct. App. 2007). The supreme court has acknowledged that "[w]hile our standard of review is highly deferential to a state agency in determining whether the agency acted within its statutory authority, there is . . . a difference between an appeal challenging an agency's decision under administrative law principles and a civil action against a state agency[.]" *Gulfside Casino P'ship v. Miss. State Port Auth. at Gulfport*, 757 So. 2d 250, 256 (¶29) (Miss. 2000). "When reviewing a decision by a chancery or circuit court regarding an agency action, . . . this Court applies the same standard of review that the lower courts are bound to follow." *Clay v. Epps*, 19 So. 3d 743, 745 (¶7) (Miss. Ct. App. 2008); *see also Miss. Comm'n on Envtl. Quality v. Chickasaw Cty. Bd. of Sup'rs*, 621 So. 2d 1211, 1215 (Miss. 1993); *Brady v. Hollins*, 2014-CP-01630-COA, 2016 WL 211622, at *1 (¶4) (Miss. Ct. App.

20

Jan. 19, 2016).

¶31.    This Court "will examine the appeal to determine whether the order of the administrative agency (1) was unsupported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the aggrieved party." *Id.*; *see also Adams v. Miss. State Oil & Gas Bd.*, 139 So. 3d 58, 62 (¶7) (Miss. 2014); *Miss. Transp. Comm'n v. Anson*, 879 So. 2d 958, 963 (¶13) (Miss. 2004); *Pub. Emps' Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (¶11) (Miss. 2000); *Miss. Comm'n on Envtl. Quality v. Chickasaw Cty. Bd. of Sup'rs*, 621 So. 2d 1211, 1215 (Miss. 1993); *Brady*, 2016 WL 211622, at *1 (¶4).  This "statutory scope of judicial review" of an administrative agency's decision is set forth in Mississippi Code Annotated section 75-71-609.  *Anson*, 879 So. 2d at 963 (¶13).  Our appellate courts "generally accord[] great deference to an administrative agency's construction of its own rules and regulations and the statutes under which it operates." *Queen City Nursing Ctr. Inc. v. Miss. State Dep't of Health*, 80 So. 3d 73, 84 (¶28) (Miss. 2011).

¶32.    In administrative agency appeals, the chancery court, like this Court, performs a limited appellate review. *Bd. of Law Enf't Officers Standards & Training v. Butler*, 672 So. 2d 1196, 1199 (Miss. 1996) (when reviewing an administrative agency's action, "[c]hancery and circuit courts are held to the same standard as [the supreme court and court of appeals]."); *see also Elec. Data Sys. Corp. v. Miss. Div. of Medicaid*, 853 So. 2d 1192, 1202 (¶¶29-30) (Miss. 2003); *Miss. Bureau of Narcotics v. Stacy*, 817 So. 2d 523, 528 (¶17) (Miss. 2002).   We recognize that the "[r]eview of an order from an administrative agency's proceeding is limited to the record and the findings of the agency." *Anson*, 879 So. 2d at 964

21

(¶18). In *Brady*, we explained that this Court looks to see whether the trial court, sitting as an appellate court, "exceeded its authority [while] bearing in mind that a rebuttable presumption exists in favor of the action of the [administrative] agency, and the burden of proof is on the party challenging the agency's action." *Brady*, 2016 WL 211622, at *1 (¶4) (internal quotation marks omitted); *see also Boyles v. Miss. State Oil & Gas Bd.*, 794 So. 2d 149, 153 (¶7) (Miss. 2001). The supreme court explained that "[w]here that authority has been exceeded, [appellate courts] will reverse and reinstate the agency's order." *Anson*, 879 So. 2d at 963 (¶13); *Miss. Emp't Sec. Comm'n v. Pulphus*, 538 So. 2d 770, 772 (Miss. 1989) ("[I]n the absence of fraud, an order from [an administrative agency] on the facts is conclusive on the lower court, if supported by substantial evidence.").

¶33. Here, in accordance with precedent and our limited standard of review in the administrative-agency appeal, we must review the agency order to determine if the Secretary of State, acting in its regulatory capacity, complied with its statutory authority. In review of the administrative-agency order, we must determine if the chancellor, sitting as an appellate court, exceeded his authority. *See Brady*, 2016 WL 211622, at *1 (¶4).

¶34. The supreme court has explained that Mississippi Securities Act Rule 817(B) provides that "unless otherwise specified by law, the standard of proof at the hearing shall be by a preponderance of the evidence standard." *Harrington v. Office of Miss. Sec'y of State*, 129 So. 3d 153, 161 (¶16) (Miss. 2013). When reviewing an agency's action to determine if it was "supported by substantial evidence or was arbitrary or capricious, we must be able to understand why the agency ruled as it did" based on the record before us. *Id.* at (¶8); *see also Thomas v. Pub. Emps' Ret. Sys. of Miss.*, 995 So. 2d 115, 118, 120 (¶¶14, 22) (Miss. 2008)

22

(Findings supported by substantial evidence should be accepted, as "the existence within government of discrete areas of quasi-legislative, quasi-executive, quasi-judicial regulatory activity in need of expertise" is the main purpose of an administrative agency.); *Anson*, 879 So. 2d at 962-63 (¶12); *Elec. Data Sys.*, 853 So. 2d at 1202 (¶30). Moreover, in our appellate review, we must acknowledge that Mississippi Code Annotated section 75-71-609(a) provides that in administrative proceedings to enforce the Mississippi Securities Act, findings of fact made by the Secretary of State are conclusive where supported by substantial and credible evidence.

¶35. We recognize, however, that "an agency's interpretation of a rule or statute governing the agency's operation is a matter of law that is reviewed de novo, but with great deference to the agency's interpretation." *Miss. Dep't of Revenue v. Isle of Capri Casinos Inc.*, 131 So. 3d 1192, 1194 (¶5) (Miss. 2014). We also acknowledge that the supreme court has "generally accorded great deference to an administrative agency's construction of its own rules and regulations and the statutes under which it operates." *Molden v. Miss. State Dep't of Health*, 730 So. 2d 29, 32-33 (¶8) (Miss. 1998) (quoting *Miss. State Tax Comm'n v. Mask*, 667 So. 2d 1313, 1314 (Miss. 1995)). We recognize that "an administrative board must afford minimum procedural due process under the Fourteenth Amendment to the United States Constitution and under Art[icle] 3, [Section] 14 of the Mississippi Constitution consisting of (1) notice and (2) opportunity to be heard." *Booth v. Miss. Emp't Sec. Comm'n*, 588 So. 2d 422, 428 (Miss. 1991).

## DISCUSSION

¶36. Watkins argues the chancellor erred in finding that the transfer of Retro Metro bond

proceeds to the MLEC violated section 75-71-501 of the Mississippi Securities Act. Watkins argues that it was legally entitled to receive the amount of $587,084.37, which was transferred from Retro Metro's account to a real-estate-closing account in Meridian to purchase property for MLEC on June 8, 2011, as compensation under the February 21, 2011 Development Agreement between Retro Metro and Watkins Development. Watkins argues that it was owed this amount, plus some, pursuant to the Development Agreement as a result of the work performed on the Retro Metro project. As a result, Watkins claims that it possessed every legal right to direct this amount allegedly owed as compensation under the Development Agreement to the purchase of property on behalf of the MLEC project.

¶37. Regarding Watkins's failure to disclose the financial obligations of Retro Metro to Watkins Development in the PPM, Watkins argues that the purchaser of the bonds was only interested in the City of Jackson lease, and not the Development Agreement, in making its decision regarding the bonds. The record also shows that David Watkins at the administrative hearing testified that the financial obligation set forth in the Development Agreement vested in Retro Metro at the time of closing of the bond issuance. However, the record herein shows that Watkins never disclosed the existence of the Development Agreement containing Retro Metro's financial obligation in the PPM, Loan Agreement, and other bond documents.

¶38. The Secretary of State, however, argues that consistent with the findings below, Watkins violated the Mississippi Securities Act by failing to disclose his intentions to use the bond proceeds to finance the MLEC project and by misusing the bond proceeds. In support of this argument, the Secretary of State maintains that Watkins possessed no authority under

24

the loan terms to use the bond proceeds for any purpose other than revitalizing the Belk building.[19] The Secretary of State also asserts that substantial and competent evidence supports the finding (set aside by the chancellor) that Watkins violated the Mississippi Securities Act in failing to disclose Retro Metro's financial obligations arising from the Development Agreement in the PPM, Loan Agreement, and bond documents.[20]

¶39. In support of the Secretary of State's finding of a violation of the Mississippi Securities Act for this omission, the Secretary of State asserts that the hearing officer correctly found that based upon evidence presented at the hearing, through testimony and documents, Watkins's omission of Retro Metro's financial obligation to Watkins Development constituted a significant and material financial liability and that such material factual omission resulted in untrue factual representations and fraud in violation of section 75-71-501. The Secretary of State asserts this finding is supported by substantial evidence in the record, including the testimony of Keith Parsons (bond counsel) and the PPM, Loan Agreement, and bond documents submitted to MBFC, a review of which revealed the material omission of Retro Metro's financial obligation.

¶40. Regarding the law establishing violations of the Mississippi Securities Act, section 75-71-501 of the Mississippi Securities Act provides:

> It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly,
>
> > (1) To employ any device, scheme or artifice to defraud;

---

[19] *See* Miss. Code Ann. § 57-10-401(b) (defining approved costs).

[20] *See* Miss. Code Ann. § 57-10-401(i) (defining finance agreement).

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

¶41.    Judicial review of the action of an administrative agency determines "only whether the order of the agency 1) was supported by substantial evidence, 2) was arbitrary or capricious, 3) was beyond the power of the agency to make, or 4) violated some statutory or constitutional right of the complaining party." *Adams*, 139 So. 3d at 62 (¶7).  Furthermore, we recognize that Mississippi Securities Act Rule 817(B) provides that "[u]nless otherwise specified by law, the standard of proof at [an administrative] hearing shall be by a preponderance of the evidence standard." *Harrington*, 129 So. 3d at 161 (¶16); Miss. Sec. Act R. 817(B).

¶42.    In addressing the arguments of Watkins and the Secretary of State, we will first review the law as applied to the facts herein as to the three violations affirmed by the chancellor, and then we will address the violation that was set aside by the chancellor.  The chancellor affirmed the Secretary of State's three findings providing that Watkins violated subsections (1), (2), and (3) of section 75-71-501, explaining that the Secretary of State's findings were supported by substantial evidence, were not arbitrary and capricious, were within the Secretary of State's authority, and did not violate Watkins's statutory or constitutional rights. As set forth above, the chancellor affirmed the following three violations of the Mississippi Securities Act found by the Secretary of State:

(b) When Watkins failed to disclose their intentions to use the proceeds for any

26

purpose other than the improvements for the Retro Metro project, Watkins violated [s]ection 75-71-501(1) by employing a device, scheme, or artifice to mislead or deceive; is affirmed;

(c) Watkins'[s] use of a portion of the Proceeds to finance the activities of Mississippi Law Enforcement Center, LLC is a material omission and violation of [s]ection 75-71-501(2) of the [Mississippi Securities] Act; is affirmed;

(d) Watkins'[s] misuse of the Bond Proceeds was an act and course of business that operated to mislead or deceive. This is in connection with the offer and sale of securities and is a violation of [s]ection 75-71-501(3) of the [Mississippi Securities] Act; is affirmed. The court further affirms the Secretary's Final Order imposing restitution, administrative penalties and costs against Watkins Development and Watkins, jointly and severally.

¶43. In affirming the three findings of securities violations, the chancellor agreed that when Watkins failed to disclose its intentions to use the bond proceeds for any purpose other than the improvements for the Retro Metro project, Watkins violated section 75-71-501(1) by employing a device, scheme, or artifice to mislead or deceive. The chancellor recognized that although the Secretary of State found that Watkins violated section 75-71-501(1), the Secretary of State declined to impose a fine on Watkins in connection with the violation under section 71-71-501(1). The chancellor observed that "all penalties imposed on Watkins in the [Secretary of State's Final Order] were imposed under [s]ections 75-71-501(2) and (3)."

¶44. The chancellor held that Watkins's "use of a portion of the bond proceeds to finance the activities of MLEC is a material omission and thus a violation of section 75-71-501(2)."[21] The chancellor explained that Watkins represented through the bond documents and PPM

---

[21] *See* Miss. Code Ann. § 57-10-401(b) (defining approved costs).

27

that the Retro Metro bond proceeds would be used solely to renovate the Belk building.  We agree with the chancellor's determination that substantial evidence in the record revealed that Watkins failed to honor the representations contained in the PPM, Loan Agreement, and bond documents when he transferred $587,084.34 of the bond proceeds to purchase property in Meridian for the MLEC project.

¶45.    The chancellor further held that Watkins's misuse of the bond proceeds constituted "an act and course of business that operated to mislead or deceive. . . . in connection with the offer and sale of securities and is a violation of section 75-71-501(3)."  The chancellor explained that the record shows that Watkins made certain representations in the PPM and bond documents that the bank proceeds would be used for revitalizing the Belk building. The chancellor found that Watkins instead used $587,087.34 of that money to fund the MLEC.  The chancellor acknowledged Watkins's argument that more than $587,000 was owed to him by Retro Metro pursuant to the Development Agreement.  The chancellor, however, found that the actual transfer of the money, without any documentation supporting the validity of such action, operated as a deceit pursuant to section 75-71-501(3).  We find substantial credible evidence in the record supporting the chancellor's findings relative to affirming three of the Mississippi Securities Act violations found by the Secretary of State, as set forth above.[22]

¶46.    We therefore affirm the chancellor's determination that Watkins engaged in three violations of the Mississippi Securities Act as set forth in subsections (b), (c), and (d) of the

---

[22] *See Adams*, 139 So. 3d at 62 (¶7); *Harrington*, 129 So. 3d at 161 (¶16).

Secretary of State's Final Order. We find substantial and competent evidence in the record supporting these findings of violations of the Mississippi Securities Act.[23] We further find that these the findings of violations were not arbitrary and capricious, and they were made within the Secretary of State's regulatory authority, and violated no constitutional or statutory right.[24]

¶47. The chancellor also determined that the Secretary of State did not violate Watkins's constitutional rights with regard to providing sufficient notice of the alleged violations of the Act filed against Watkins.[25] The chancellor found that the record reflected substantial evidence and sufficient notice of the adverse administrative action by the July 30, 2013 Notice of Intent. We acknowledge that the initial Notice of Intent was issued on July 30, 2013, and the amended Notice of Intent was issued on October 23, 2013. The record shows that Watkins did not request any delay or continuance for the October 29-30, 2013 administrative hearing. Upon review, we find the record reflects that both the July 30, 2013 Notice of Intent and October 23, 2013 amended Notice of Intent provided Watkins with sufficient notice of the administrative enforcement action initiated against Watkins, the adverse findings made by the Secretary of State of violations of the Mississippi Securities Act committed by Watkins, and sufficient notice of the Secretary of State's intent to impose penalties and order restitution pursuant to section 75-71-604. Watkins also received "the

---

[23] *See* Miss. Code Ann. § 75-71-609(a).

[24] *See Adams*, 139 So. 3d at 62 (¶7); Miss. Code Ann. § 75-71-609(a).

[25] *See* Miss. Code Ann. § 75-71-604(a), (c) (establishing the Secretary of State's enforcement authority and authorization to impose remedies and penalties).

opportunity for an administrative hearing in which [it] had the right to be represented by counsel, the right to be heard and to present evidence and witnesses, and the right to cross-examine witnesses." *Molden,* 730 So. 2d at 37 (¶15). We recognize that notice pleading is sufficient in administrative proceedings. *See Mathews v. Eldridge*, 424 U.S. 319, 348 (1976); *Akers Motor Lines Inc. v. United States*, 286 F. Supp. 213, 224-25 (W.D.N.C. 1968). Upon review, we find that the record reflects Watkins received legally sufficient notice of the Mississippi Securities Act violations and issues in controversy in order to prepare an adequate response and defense. *See Molden*, 730 So. 2d at 37 (¶15); *Adams*, 139 So. 3d at 62 (¶7). We thus also affirm the chancellor's finding in this case that the notice of this administrative proceeding was legally sufficient.

¶48. Finally, as stated, the chancellor set aside one finding made by the Secretary of State that Watkins violated the Mississippi Securities Act by the "failure to disclose in the [PPM] or the bond documents" the existence of the significant financial obligations of Retro Metro resulting from the Development Agreement.[26] In so doing, the chancellor determined facts contrary to the factual findings made by the Secretary of State. Relying upon evidence in the record, including the testimony of Keith Parsons, bond counsel, and the PPM, Loan Agreement, and bond documents, the Secretary of State found Watkins's failure to disclose this information constituted a false or misleading statement. After considering the evidence and testimony presented at the administrative hearing, the hearing officer similarly found the

---

[26] As previously stated, Watkins served as the agent executing the Development Agreement on behalf of Watkins Development and also as the agent/member executing the document on behalf of Retro Metro.

30

financial obligation of the Development Agreement significant and material, and its omission from the PPM, Loan Agreement, and bond documents false and misleading. In setting aside this finding, the chancellor held that the Secretary of State exceeded his statutory authority.

¶49. In support of his findings and conclusions, the chancellor cited to *Harrington*, 129 So. 3d at 166 (¶28). However, *Harrington*, applicable statutes, and the evidence in this case support the Secretary of State's finding that Watkins's failure to disclose in the PPM, Loan Agreement, and bond documents the significant financial obligation of Retro Metro to Watkins Development arising from the Development Agreement constituted a significant and material omission, resulting in false and misleading statements, and thus constituting a violation of section 75-71-501(2).[27] In *Harrington*, the supreme court addressed "the specific issue of whether violating promises in a PPM constitutes a violation of [s]ection 75-71-501." *Id*. Whereas in this case, the Development Agreement was an existing financial obligation of Retro Metro at the time David Watkins executed the PPM, the Loan Agreement, and other bond documents, the PPM in *Harrington* provided that the firm would maintain books and records showing how investors' funds were managed, which would be available for investors to review at any time. *Id*. at 168 (¶38). Similar to the misrepresentations and omissions of Watkins herein, in *Harrington*, the record reflected evidence that the firm failed to maintain the books and adequate records of the firm's financial operating activities. *Id*. The firm's PPM in *Harrington* stated that investment funds would be held in escrow; however, evidence in the record showed that the escrow accounts were never set up. *Id*. at 166 (¶29). Instead,

---

[27] *See* Miss. Code Ann. § 57-10-401(b) (defining approved costs); Miss. Code Ann. § 57-10-401(i) (defining finance agreement).

"investors' funds were deposited in an operating account and used to pay daily operating expenses." *Id*. The supreme court determined that "[t]he assurance that funds would be held in escrow likely would be a material fact to investors." *Id*. at 167 (¶33).

¶50.     The *Harrington* court explained that since the firm failed to maintain the books and records, the promise in the PPM to do so "was untrue, misleading, and part of the overall fraud committed by [the officers]," and such conduct constituted a violation of section 75-71-501. *Id*. The *Harrington* court affirmed the chancellor's finding that the officers of the real-estate-investment and securities firm violated section 75-71-501 by failing to comply with the terms set forth in the firm's PPM. *Id*. at 174 (¶59). The supreme court explained in *Harrington* that "[c]learly, the specific act of failing to deposit funds into an escrow account is not explicitly prohibited by [s]ection 75-71-501. However, that section does prohibit making untrue statements and engaging in practices that are or would be fraudulent or deceitful." *Id*. Significant to the issue in the instant case, the supreme court in *Harrington* found that "false statements were made in the PPM, and the use of investors' money to cover daily expenses was deceitful and fraudulent," which constituted a violation of section 75-71-501. *Id*. at (¶34).[28] We find that the precedent of *Harrington* supports the Secretary of State's determination that Watkins's omission constituted a Mississippi Securities Act violation by failing to disclose this significant and material liability. Moreover, the determination of whether the omission was material consists of a question of fact within the authority of the Secretary of State to conclusively find.

---

[28] *See also S.E.C. v. Zandford*, 535 U.S. 813, 819 (2002); *United States v. 0'Hagan*, 521 U.S. 642, 656 (1997); *TSC Indus Inc. v. Northway Inc*., 426 U.S. 438, 449 (1976).

¶51.    Evidence shows that Keith Parsons (bond attorney) sent David Watkins an email on February 3, 2011, to verify the information in the PPM.  The record shows that Retro Metro then entered into the Development Agreement with Watkins Development.  As discussed, in April 2011, David Watkins executed the Loan Agreement and PPM without including or disclosing the financial obligation set forth in the Development Agreement.  The financial obligation in the Development Agreement constituted an existing liability at the time the PPM, Loan Agreement, and other bond documents were executed and completed.  However, in the PPM, Loan Agreement, and other bond documents, Watkins denied the existence of any other agreement or instrument that would adversely affect its business, properties, assets, liabilities, operations, income, or condition, whether financial or otherwise.  Hence, the record reflects more than a mere omission in the April 1, 2011 Loan Agreement or April 5, 2011 PPM.  The omission of this financial information constituted an affirmative denial and affirmative failure to disclose the significant financial liability set forth in the Development Agreement.  In support of the Secretary of State's findings, the record shows that the PPM, Loan Agreement, and bond documents served as the relevant information used by Keith Parsons and MBFC to decide whether to approve and issue the bonds and bond proceeds. The record reflects substantial and competent evidence to support the Secretary of State's determination that the PPM, Loan Agreement, and bond documents falsely represented that Retro Metro was not a party to any materially adverse financial obligations.[29]  As discussed,

---

[29] As stated previously, section 2.2(k) of the Loan Agreement provided: "Other than any agreements which have been delivered to the Issuer and the Trustee or the Purchaser, the Company [Retro Metro] is not a party to any indenture, agreement or other instrument materially and adversely affecting its business, properties, assets, liabilities, operations,

33

the evidence, including Keith Parson's testimony, provided substantial and competent evidence to support the Secretary of State's finding that the financial obligation was significant and material, and its omission rendered the documents misleading and false. The administrative hearing transcript shows that Keith Parsons testified before the hearing officer that if Watkins disclosed Retro Metro's financial liability of $500,000, it would have made a difference in the bond proceedings because "$500,000 would have been the difference in being in default and not being in default."[30] The record of the administrative hearing reflects that Keith Parsons further testified that had Watkins disclosed both the Development Agreement and how the bonds proceeds would actually be spent, then "there would have been no bond issued because I . . . would have not given an opinion and we would have called the deal off."[31]

¶52. We next address the chancellor's conclusion that the Secretary of State lacked authority to find Watkins violated section 75-71-501(2) by failing to disclose the significant financial liability set forth in the Development Agreement. The Secretary of State possesses statutory authority to enforce the Mississippi Securities Act and to render related findings of fact in administrative enforcement proceedings. *See* Miss. Code Ann. § 75-71-604.[32]

---

income or condition, whether financial or otherwise."

[30] *See* Miss. Code Ann. § 57-10-401(b) (defining approved costs); *see also* Miss. Code R. 6-1-2:9 & 6-1-2:2.

[31] *See* Miss. Code R. 4-3:1.2; Miss. Code Ann. § 31-13-5 (Rev. 2010) (opinion of bond attorney required to validate sufficiency of bond papers supporting bond issue, in order to validate bond issue); *see also* Miss. Code Ann. § 7-1-403 (Rev. 2014) (requiring annual reporting of state bond attorney and other bond counsel).

[32] *See* Miss. Code Ann. § 75-71-604.

Mississippi Code Annotated section 75-71-609(a) sets forth that "[a]ny person aggrieved by a final order of the administrator may obtain a review of the order in the [Hinds County Chancery Court] by filing in court, within sixty . . . days after the entry of the order, a written petition praying that the order be modified or set aside in whole or in part." This statute further provides that upon review, the chancellor possesses "exclusive jurisdiction to affirm, modify, enforce or set aside the order, in whole or in part. The findings of the administrator [Secretary of State] as to the facts, if supported by competent material and substantial evidence, are conclusive."

¶53.    The Mississippi Securities Act includes the definition of general fraud as an omission of a material fact. *See* Miss. Code Ann. § 75-71-501(2). As stated, section 75-71-604(a)-(e) provides authority to the Secretary of State to enforce the Mississippi Securities Act when fraud or deception practices are suspected.[33] Therefore, the Secretary of State possessed statutory authority to make determinations of facts related to this enforcement action regarding allegations set forth in the Notice of Intent alleging that Watkins violated the Mississippi Securities Act. The determination of whether Watkins's omission of the Development Agreement, which included Retro Metro's significant financial liability, from the PPM, Loan Agreement, and bond documents constitutes a question of fact. The Secretary

---

[33] Mississippi Code Annotated section 75-71-505 (Rev. 2009) states:

It is unlawful for a person to make or cause to be made, in a record that is used in an action or proceeding or filed under this chapter, a statement that, at the time and in the light of the circumstances under which it is made, is false or misleading in a material respect, or, in connection with the statement, to omit to state a material fact necessary to make the statement made, in the light of the circumstances under which it was made, not false or misleading.

35

of State certainly possessed the statutory authority in this administrative Securities Act enforcement action to enforce Mississippi's securities laws and determine facts as necessary and where supported by the evidence. *See* Miss. Code Ann. § 75-71-609(a) (The Secretary of State's findings of facts, "if supported by competent material and substantial evidence, are conclusive.").[34]

¶54.    In addition to the substantial and competent evidentiary support for the four violations of the Mississippi Securities Act, the Secretary of State clearly possessed the statutory authority to render such findings. Therefore, the chancellor erroneously found that the Secretary of State lacked authority to determine whether Watkins's failure to disclose the Development Agreement's financial liability constituted false or misleading information. *See* Miss. Code Ann. § 75-71-609(a); *see also Adams*, 139 So. 3d at 62 (¶7) (limited standard of review for administrative agencies); *Miss. Dep't of Revenue v. AT&T Corp.*, 101 So. 3d 1139, 1143, 1146 (¶¶13, 20) (Miss. 2012)[35] (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it.") (internal quotation marks omitted); *Home Ins. v. Watts*, 229 Miss. 735, 753, 93 So. 2d 848, 850 (1957) ("[T]he

---

[34] *Molden*, 730 So. 2d at 32-33 (¶8); *see also Mask*, 667 So. 2d at 1314; *Melody Manor Convalescent Ctr. v. Miss. State Dep't of Health*, 546 So. 2d 972, 974 (Miss. 1989).

[35] In *AT&T Corp.*, 101 So. 3d at 1147 (¶22) (citing *Khurana v. Mississippi Department of Revenue*, 85 So. 3d 851, 855 (¶11) (Miss. 2012), the supreme court explained that "the chancery court's authority to review the decisions of [an administrative agency] is governed by compliance with the statute[.]").

question of jurisdiction may be raised at any stage of the proceedings, and even by the Court of its own motion.")).

¶55. Based upon the foregoing, we find that the chancellor abused his discretion in reversing the Secretary of State's finding, and penalties related thereto, that Watkins violated section 75-71-501(2) of the Mississippi Securities Act by failing to disclose in the bond documents that Retro Metro possessed significant and material financial obligations to Watkins Development, as set forth in the Development Agreement. *See* Miss. Code Ann. § 75-71-609(a); *Elec. Data Sys.*, 853 So. 2d at 1202 (¶¶29-30) (In administrative-agency appeals, the chancery court performs a limited appellate review). We find that the record indeed contains substantial and competent evidence and statutory authority supporting the Secretary of State's finding that Watkins's failure to disclose the Development Agreement resulted in an omission of a significant and material liability of Retro Metro in violation of section 75-71-501(2). As a result, we reinstate the Secretary of State's finding as to this violation, as well as the following related penalty imposed by the Secretary of State as a result of this finding: "Twenty-Five Thousand Dollars ($25.000.00) for violating [s]ection 75-71-501(2) [of the Act] by omissions and untrue statements in the bond offering and sale." *See Anson*, 879 So. 2d at 963 (¶13) ("Where that authority has been exceeded, [appellate courts] will reverse and reinstate the agency's order."); *Brady*, 2016 WL 211622, at *1 (¶4) (In review of the administrative-agency order, we must determine if the chancellor, sitting as an appellate court, exceeded his authority.).

¶56. However, as discussed, we join the chancellor in affirming the Secretary of State's Final Order as to the other three violations of the Mississippi Securities Act and related

penalties. We therefore reinstate the findings of violations of the Mississippi Securities Act,

and related penalties imposed as a result of these violations, in the Secretary of State's Final

Order as follows:

> (4) [Watkins's] failure to disclose in the [PPM] or the bond documents claimed significant and material liabilities of Retro Metro . . . to Watkins Development as set forth in the Development Agreement is a violation of section 75-71-501(2) . . . .
>
> (5) When [Watkins] failed to disclose their intentions to use the proceeds for any purpose other than the improvements for the Retro Metro project, [Watkins] violated [s]ection 75-71-501(1) by employing a device, scheme, or artifice to mislead or deceive.
>
> (6) [Watkins's] failure to disclose in the bond documents, including the requisition, the intent to use any portion of the proceeds to finance the activities of [MLEC] is a material omission and violation of [s]ection 75-71- 501(2) . . .
>
> (7) Watkins's misuse of the bond proceeds was an act and course of business that operated to mislead or deceive. This is in connection with the offer and sale of securities and is a violation of [s]ection 75-71-501(3) . . . .
>
> . . . .
>
> An administrative penalty of . . . $75,000.00 is jointly and severally assessed against . . . Watkins Development, LLC and David Watkins calculated as follows:
>
> Twenty Five Thousand Dollars ($25,000.00) for violating Mississippi Code Annotated [s]ection 75-71-501(2) by omissions and untrue statements in the bond offering and sale.
>
> Twenty Five Thousand Dollars ($25,000.00) for violating Mississippi Code Annotated [s]ection 75·71-501(3) by employing misleading and deceptive actions in connection with the use of bond proceeds.
>
> Twenty Five Thousand Dollars ($25,000.00) for violating Mississippi Code Annotated [s]ection 75-71-501 (2), (3) by making substantial omissions in the requisitions for payments. While Requisitions submitted were not identical to

Exhibit C to the Loan Agreement, the Secretary of State respectfully disagrees with the Hearing Officer that the alteration in form was a violation of Section 75-71-501 of the Act.

¶57. We therefore affirm in part and reverse and render in part the chancellor's judgment, and we reinstate the Final Order of the Secretary of State.

¶58. **THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART, AND THE JUDGMENT OF THE SECRETARY OF STATE IS REINSTATED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., ISHEE, FAIR AND GREENLEE, JJ., CONCUR. WILSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING AND GRIFFIS, P.JJ. BARNES AND JAMES, JJ., NOT PARTICIPATING.**

**WILSON, J., DISSENTING:**

¶59. I dissent for two reasons. First, the Secretary of State did not cross-appeal the chancellor's reversal of the agency's findings and penalty related to Watkins's non-disclosure of the development agreement. The Secretary does not seek reversal of the chancellor's ruling and expressly acknowledges that "the issue is moot for purposes of this appeal." The majority nevertheless raises the issue sua sponte and reverses in relevant part. The majority errs in doing so, as the issue is not properly before this Court.

¶60. Second, with respect to the part of the case that is properly before the Court, the Secretary's findings do not establish a violation of the Securities Act. The Secretary found that Watkins violated the Act by diverting funds to an unrelated project in contravention of a representation in the private placement memorandum (PPM) that bond proceeds would be used for the Metrocenter project only. In so finding, the Secretary dismissed as "irrelevant" Watkins's claim that he was owed the allegedly diverted funds *as payment for his work on*

39

*the Metrocenter project*. However, for the reasons explained below, that issue is not merely relevant but is logically fundamental to the remaining claims against Watkins. If Watkins was owed the funds for work he did on the Metrocenter project, then there was no violation of the representation that is the basis for the remaining claims against him.

¶61. The underlying facts of this case are in some respects complicated, but the Secretary's final order may be summarized as finding that Watkins made basic two basic statements or omissions in connection with the April 2011 bond sale that were false or misleading: *First*, Watkins executed a loan agreement that included a representation that Retro Metro had disclosed any agreement that "materially and adversely affect[ed] its business, properties, assets, liabilities, operations, income or condition, whether financial or otherwise." The Secretary found this statement to be false or misleading because Retro Metro had not disclosed a development agreement that obligated it to pay Watkins Development a minimum of $1,125,000 to design and construct the project. *Second*, Watkins represented through the PPM that Retro Metro would use the bond proceeds "to improve the Metrocenter shopping center" (and, implicitly, for that purpose only). The Secretary found this statement to be false or misleading because he found that Watkins diverted a portion of the bond proceeds to an unrelated project in Meridian.

¶62. The chancellor reversed the Secretary's findings and penalties related to the first statement/omission. In ruling that the non-disclosure of the development agreement did not violate the Securities Act, the chancellor found that there was no evidence that the agreement was fraudulent or authorized excessive compensation; no evidence that the agreement was "adverse" to Retro Metro; and no evidence that its terms were material or would have

40

contradicted the expectations of a purchaser of the bonds. The Secretary did not file a cross-appeal and does not argue that any part of the judgment below should be reversed. Indeed, the Secretary's brief expressly states that "the issue [of the non-disclosure of the development agreement] is moot for purposes of this appeal."

¶63.    "[A] cross appeal is necessary to obtain a decision more favorable than that rendered by the lower tribunal . . . ." *Douglas v. Burley*, 134 So. 3d 692, 697 n.6 (Miss. 2012) (quoting *Dunn v. Dunn*, 853 So. 2d 1150, 1152 (¶4) (Miss. 2003)). As the Secretary took no cross-appeal in this case, the chancellor's reversal of the Secretary's findings and penalty related to the non-disclosure of the development agreement is not before this Court. The majority seems to imply that a chancellor's partial reversal of an agency decision is somehow a *jurisdictional* issue that we must address sua sponte. *See ante* at (¶54). However, the majority cites no authority that even remotely supports that suggestion. The majority errs by sua sponte reversing the chancellor's judgment in part.

¶64.    The majority's reversal of a ruling that is not properly before the Court not only results in the improper reinstatement of a penalty but also confuses the issue that *is* properly before us. Because there was no cross-appeal, we must accept it as settled that Watkins did not violate the Securities Act by not disclosing the development agreement. *Dixon v. Breland*, 192 Miss. 335, 6 So. 2d 122, 122 (1942). The only issue before us is whether the Secretary's findings support the legal conclusion that Watkins violated the Securities Act by using bond proceeds for a purpose other than the Metrocenter renovation project, i.e., by diverting proceeds to the Meridian project. For at least one logical reason, the Secretary's remaining findings do not add up to a violation of the Act.

41

¶65. In finding violations based on the alleged diversion of proceeds, the hearing officer and, by extension, the Secretary stated in part:

> Although [Watkins] argue[s] that more than $587,000 was owed to Watkins Development, whether or not the money [was] owed is irrelevant. The actual act of the transfer, particularly without any paperwork documenting the validity of such obligation, *would operate* as a deceit.

The Secretary made no finding that Watkins was not owed the $587,000. Moreover, by dismissing the issue as "irrelevant," the Secretary effectively assumed, at least for purposes of this proceeding, that Watkins *was* owed the funds. The chancellor specifically adopted this reasoning in affirming the Secretary in relevant part.

¶66. The Secretary's reasoning directly conflicts with the logic and basis of the remaining claims against Watkins. As explained above, the Secretary alleges that Watkins's use of bond proceeds to purchase property in Meridian violated the Securities Act because it was inconsistent with a representation in the PPM that bond proceeds would be used "to improve the Metrocenter shopping center" only. However, if the "$587,000 was owed to Watkins Development," then it was owed to Watkins Development for its efforts *to improve the Metrocenter shopping center*. Thus, the question whether the funds were "owed to Watkins Development" is not merely relevant but is fundamental to the remaining claims against Watkins. In the absence of a finding that the funds were not owed to Watkins, the Secretary's conclusion that Watkins diverted the funds for an improper purpose cannot stand. If Watkins was owed this money, then the money was simply compensation for services rendered—consistent with the purpose designated in the PPM.

¶67. Further, I cannot understand or agree with the Secretary's statement that, regardless

42

of whether the money was owed to Watkins, "[t]he actual act of the transfer, particularly without any paperwork documenting the validity of such obligation, *would operate* as a deceit" and a violation of the Act. The relevant issue is *not* whether the transfer without a proper requisition and supporting documentation is questionable or misleading in some general or abstract sense. Rather, based on the remaining claims against Watkins in this case, the relevant issue is whether the transfer rendered false, misleading, or deceptive *the representation in the PPM that the funds would be used for the Metrocenter project.* If Watkins was owed the money for services rendered to improve the Metrocenter, then the transfer was consistent with the relevant requirement of the PPM.

¶68. In other words, the conclusion that the "actual act of transfer" was not—in and of itself—a violation of the Securities Act does not imply or require a determination that the transfer was in all respects proper or consistent with all contractual requirements. There is evidence that the requisitions and supporting documentation submitted by Watkins were inadequate and did not satisfy the requirements of Retro Metro's loan agreement. However, there is also evidence that the trustee bank accepted the requisitions and made payments, and Watkins asserts that some of the requirements of the loan agreement had been waived. Regardless, this issue is, at best, tangential to the Secretary's claims against Watkins under the Securities Act. Even assuming that Watkins did violate the loan agreement's requirements for requisitioning funds, without something more, that is a contractual issue, not a violation of the Securities Act. Contractually insufficient requisitions or inadequate paperwork would not render false or misleading the statements in the PPM regarding the purpose of the bond proceeds.

43

¶69. I also do not intend to suggest that the evidence establishes that Watkins *was* owed the $587,000. The development agreement can be interpreted to provide that Watkins Development was entitled to a $625,000 mobilization fee immediately upon the sale of the bonds, and Watkins testified that he had not received that fee as of June 2011. As the chancellor discussed, there appear to be insinuations that the development agreement provided for excessive fees, but there is no actual evidence to support those insinuations. Keith Parsons also opined that Watkins must not have met his obligations under the development agreement because the project was not completed on time and went into default, but Watkins blamed the City for delays and the default. The evidence in the record is simply insufficient to establish whether Watkins was owed the funds at issue. Therefore, it is certainly understandable that the Secretary made no finding on the issue. But for the reasons discussed above, the issue cannot be dismissed as "irrelevant." It is central to the remaining Securities Act claims asserted against Watkins in this proceeding and cannot be assumed away.

¶70. Based on the evidence and findings in the administrative proceeding, we should reverse and render judgment in favor of Watkins. Accordingly, I respectfully dissent.

**IRVING AND GRIFFIS, P.JJ., JOIN THIS OPINION.**